**IOWA BEEF PROCESSORS, INC., Appellant,**

v.

**AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, Appellee.**

No. 79–1721.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1980.

Decided Aug. 11, 1980.

---

17. *See* notes 6 & 14 *supra.*

Arthur T. Carter, Tate, Bruckner & Sykes, Lincoln, Neb., for appellant.

Irving M. King, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., argued, Ellen J. Morgan, Lincoln, Neb., on brief, for appellee.

1. The Honorable Albert G. Schatz.

Before LAY, Chief Judge, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

Iowa Beef Processors, Inc. brought this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 (1976), seeking a declaration that the Union's grievance about a change in work scheduling from fixed shift to rotating shift was not arbitrable under the terms of the collective bargaining agreement of the parties. The Union counterclaimed, seeking an order compelling Iowa Beef to arbitrate the grievance. The district court had jurisdiction of the counterclaim pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976). Pursuant to Fed.R. Civ.P. 12(c), the Union moved for judgment on the pleadings. The district judge [1] referred the matter to a magistrate,[2] who recommended granting the motion. The district court followed this recommendation and entered judgment for the Union. Iowa Beef appeals. We affirm.

Prior to 1974 Iowa Beef utilized its slaughter workers in its Dakota City, Nebraska plant on a rotating shift basis. This meant that a worker temporarily would be assigned to the morning shift, then temporarily assigned to the afternoon shift, and then back to the morning shift, etc. During negotiations preceding a collective bargaining agreement for 1974, Iowa Beef indicated its intention to change to a fixed shift schedule, i. e., workers would be permanently assigned to either the morning or afternoon shift. The Company and the Union entered into an agreement which was in effect from January, 1974 to January, 1977, and the slaughter division employees were on a fixed shift schedule throughout this period. However, the 1974 contract did not specify any duty of the Company to use fixed shifts.

In February, 1977, after the expiration of the 1974 contract, the employees of Iowa Beef began a strike which lasted until May 1, 1978. On that date a new collective

2. The Honorable Richard C. Peck.

bargaining agreement became effective for a period ending May 1, 1982. The new agreement was the result of extensive negotiations.

At some time after the expiration of the first contract but before the effective date of the second contract, Iowa Beef decided to return to a rotating shift schedule. On May 5, 1978 the Union filed a grievance, protesting the unilateral scheduling change. The dispute was processed through all stages of the grievance procedure provided for in the contract, up to the point of arbitration. The Company refused to arbitrate the merits of the dispute but did offer to submit the question of arbitrability to an arbiter. The Union did not accept the offer. Instead, it gave notice of the articles and sections of the labor agreement allegedly violated by the Company, stated its contention that the Company had violated an established past practice relative to straight shift operation, and announced its preparation to argue on arbitration the question whether the Union had an opportunity to raise the rotating shift question during contract negotiations.[3] Shortly thereafter this action was commenced.

■ As the magistrate recognized, a court should not grant a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings unless the movant clearly establishes that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law. 5 C. Wright & A. Miller, Federal Practice & Procedure § 1368 at p. 690. "An issue of fact is deemed to be material if the outcome of the case might be altered by its resolution one way rather than another." *Id.* at 694. Accordingly, the trial court faced with a motion for judgment on the pleadings is required to construe all well pleaded factual allegations of the non-moving party as true, and to draw in favor of that party all reasonable inferences from these facts. *Quality Mercury, Inc. v. Ford Motor Co.,* 542 F.2d 466, 468 (8th Cir. 1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977).

The magistrate found that only the following facts were in dispute:

(1) When did the Company change its shift policy from fixed to rotating? The Company asserted that the change was in December, 1977, during the strike; the Union claimed that it heard of the change on May 1, 1978, when employees returned to work and were required to work rotating shifts.

(2) What was the bargaining history of the work shift policy? The Company alleged that prior to the 1974 contract, it informed the Union that it reserved the right to return to rotating shifts; the Union denied that allegation.

For purposes of the Union's motion, the magistrate assumed: (1) the actual change in shift policy occurred in December, 1977; and (2) in negotiations prior to the 1974 agreement, the Company informed the Union that it reserved the right to change its shift policy. The Company urges that the district court should have made a third assumption—that the Union did not protest the December, 1977 policy change before the contract was signed. The Company asserts that if the foregoing three facts are taken as true, and considered with the language of the grievance and arbitration clauses, then a purpose to exclude the present controversy from arbitration emerges.

The clauses provide, in pertinent part:
Section 1. Should the Union or any individual employee desire to process a grievance pertaining to the violation of the agreement, or the violation of the employees' working conditions, the matter shall be handled according to the following steps . . . .
Section 2. If the grievance is not resolved [by earlier steps in the grievance process], the grievance may be submitted to an impartial arbitrator . . . . His [the arbitrator's] decision in the grievance

---

**3.** Letter addressed to Mr. Arden C. Walker of Iowa Beef Processors July 20, 1978 by Lewis

Anderson, acting on behalf of the Union.

shall be final and binding . . . provided he shall not have authority other than to apply the terms and conditions specifically set forth in the Agreement.

It is evident from the record that the present dispute is one of an ongoing nature. The clauses above contain no exclusionary language, and we would therefore be reluctant to find any specific exclusion was intended. The language of the grievance and arbitration clauses is plain and unambiguous, and therefore not susceptible to proof of extrinsic understandings.

■ The pronouncements in the Steelworker's Trilogy[4] make clear that federal judicial policy overwhelmingly favors arbitration of labor disputes. Labor contracts typically are made under a great deal of pressure, and

> Gaps may be left to be filled in by reference to the practices of the particular industry . . . .
>
> Arbitration is the means of solving the unforeseeable by moulding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties.

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580–81, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

Consistently with the policy favoring labor arbitration,

> [t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.

*United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

However, because arbitration is a matter of contract, mere allegations of collective bargaining agreement violations are not enough to make a dispute arbitrable. If such allegations were sufficient, then "either party by alleging a refusal of the other to bargain with respect to any conceivable issue or controversy would become subject to arbitration." *Independent Petroleum Workers v. American Oil Co.*, 324 F.2d 903, 906–07 (7th Cir. 1963).

As indicated, the magistrate found that there were only two areas of factual dispute. He concluded that, even if the facts were as the Company claimed, these facts related to the merits of the dispute rather than the question of arbitrability. Therefore, he reasoned, there were no material issues of fact and judgment on the pleadings was the appropriate disposition of the case. The Company asserts that these conclusions are erroneous because, if the facts are as the Company claims, they evince an intention of the parties to exclude the present controversy from arbitration. The Company asserts the magistrate erred in concluding the dispute was arbitrable, because he based his conclusion solely upon the Union's contention that rotating shifts violated certain provisions of the contract. The Company also claims that the district court should have required the Union to demonstrate a nexus between the dispute and the provisions of the contract which the Union alleged were violated.

The Union alleged that the rotating shift schedule violated four specific articles of the collective bargaining agreement: (1) management rights, (2) hours of work, including overtime, (3) guaranteed hours of work, and (4) seniority. We have read these provisions and find nothing in them which either explicitly or implicitly creates any duty of management to use a fixed shift schedule. While it is possible that the rotating shift schedule somehow did violate these clauses, in the present posture of this

---

4. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

case we would be reluctant to hold affirmatively that these clauses relate to the shift scheduling dispute. The Company agreed to arbitrate any "grievance pertaining to the violation of the agreement," but in summary judgment context we cannot say that merely by naming these clauses as ones the Company violated, the Union stated a claim which "on its face [was] governed by the contract," *United Steelworkers v. American Manufacturing Co., supra*, 363 U.S. at 568, 80 S.Ct. at 1346.[5]

But our inquiry is not ended. The contract also provided for arbitration of grievances concerning "the violation of employees' working conditions."

The Supreme Court has stated that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co., supra*, 363 U.S. at 582–83, 80 S.Ct. at 1353.

■ In the present case, we find that the provision for arbitration of grievances pertaining to employees' working conditions may be interpreted as covering the asserted dispute. Although the phrase "employee working conditions" could be limited to the condition of the work place provided for the employee, it could also include shift scheduling.

It is here that an observation of the magistrate bears repeating. In discussing the Company's contention that extrinsic evidence of past practices and contract negotiations would show a unilateral right to change shift policy, the magistrate said in part:

The proposed evidence relates, then, to an examination of substantive contract provisions; and the argument that it relates to arbitration in that "there would be nothing to arbitrate, because no violation of the agreement is involved" (Company's brief, p. 5) begs the question. It attempts to dispose of the merits of the grievance and thus resolve the issue of arbitration. That the court cannot do. The Supreme Court's admonition with respect to the limited function of a court in cases of this nature is controlling:

> . . . the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even though the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator. (*Warrior & Gulf, cited supra*, p. 585 [, 80 S.Ct. p. 1354]).

■ Once the facts are developed before an arbitrator, he may indeed find that one or more of the contract provisions may have been violated, or he may find either for or against the company on the merits. The arbitrator has a right to interpret and apply the contract and in doing so to consider not only the formal agreement but collateral materials as well including past prevailing practices in the company plant. *See United Furniture Workers of America, AFL–CIO, Local No. 395 v. Virco Mfg. Corp.*, 257 F.Supp. 138, 143 (E.D.Ark.1962), citing *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra*.

Paraphrasing with approval a final observation from the magistrate's report, we note that the issues in this case trigger an opposing interplay between two strong judicial policies, mandating on the one hand that doubts concerning arbitration be re-

---

5. We do not mean to suggest that the Union was required to prove the merits of its grievance. Instead, the Union was required to allege in some fashion how the grievance pertained to the provisions allegedly violated. For example, in *United Steelworkers v. Warrior & Gulf Navigation Co., supra*, the union alleged that the company violated the "no lockout" provisions by contracting out work. The union

claimed that provision was violated because the company induced a partial lockout by laying off almost half the workers covered by the contract for extended periods of time, and then contracting out the work these workers otherwise would have performed. *Id.*, 363 U.S. at 575–76, 80 S.Ct. at 1349. The Supreme Court found the allegations were sufficient to make the dispute arbitrable.

solved in favor of coverage, and on the other requiring on motion for judgment on the pleadings that all doubts be resolved in favor of the non-moving party.

Here, in light of the nature of the dispute and the contract provisions involved on this record, we conclude that the judgment of the district court granting the motion of the Union for judgment on the pleadings is affirmed.