INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) and its Local No. 716, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, Defendant.

Civ. No. 81–2213.

United States District Court, W. D. Arkansas, Fort Smith Division.

May 20, 1982.

---

Lynn-Marie Crider, Youngdahl & Larrison, Little Rock, Ark., for plaintiffs.

Edgar E. Bethell, Bethell, Callaway & Robertson, Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is an action brought by the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), against the General Electric Company under the provisions of Section 301 of the Labor Management Relations Act requesting an order requiring the defendant to arbitrate a grievance under the provisions of a Collective Bargaining Agreement entered into between the parties. The Court has jurisdiction of the case under the provisions of 28 U.S.C. § 1337.

In its complaint filed the Union alleged that the parties entered into a Collective Bargaining Agreement effective July 17, 1979 through July 16, 1982, and a copy of the agreement was attached as an exhibit to the complaint. It is alleged that the Collective Bargaining Agreement provided for arbitration of certain disputes with respect to the interpretation and application of the agreement to certain matters, including the application of Article X on seniority. It is alleged that on March 3, 1981, the Union filed a written grievance concerning the employer's failure to recall an employee, Atha Johnson. A copy of the grievance was attached as an exhibit to the complaint. It is claimed that the Manager of Plant Operations for the employer, by letter dated April 15, 1981, denied the grievance and that by letter dated May 12, 1981, the Union submitted a written demand for arbitration and that the defendant refused to arbitrate. The April 15, 1981, letter from the employer and the May 12, 1981, letter from the Union were attached as exhibits to the complaint. The complaint prays that the Court enter an order requiring the defendant to submit the grievance to arbitration.

The grievance, attached as Appendix No. 2 to the complaint, states, under "Nature of Grievance":

> Atha Johnson was laid off as a 'B' Machinist in the tool room W 21 in 1980. The Company said there wasn't any work for a 'B' Machinist at that time. The Union disagreed with the Company at that time. Now there is work for a 'B' Machinist being done in W 21 by toolmakers. Atha has more seniority than some of the employees that are now working in the tool room unit. Atha's seniority date is 8/25/66.

The portions of the Collective Bargaining Agreement covering arbitration are set forth primarily in Article XIV. Section 1 of the article provides, in pertinent part, as follows:

> Section 1. Any grievance which involves the interpretation or application of this Agreement and which remains unsettled after having been fully processed pursuant to the provisions of Article XII shall be submitted to arbitration * * * provided such request directly raises an issue which is either:
>
> (a) a disciplinary penalty * * *.
>
> (b) an alleged violation of one of the following provisions of this Agreement:
>
> Article II, CHECK OFF
>
> Article IV, DISCRIMINATION AND COERCION, except Section 3, Section 4, and Section 5 thereof.
>
> Article V, WORKING HOURS: STRAIGHT TIME–OVERTIME * * * but excluding issues pertaining or relating in any way to the scheduling of work shifts, shutdowns, overtime, or continuous operations.
>
> Article VI, RATES OF PAY, * * * but excluding any issue pertaining or relating in any way to the establishment, changing or elimination of a job classification or a wage rate, or the method by which an employee is paid.
>
> Article VII, HOLIDAYS.
>
> Article VIII, CONTINUITY OF SERVICE—SERVICE CREDITS.
>
> Article IX, VACATIONS, except as to issues pertaining or relating in any way to the scheduling of vacation shutdown or the scheduling of an employee's individual vacation period.
>
> Article X, SENIORITY, excluding any issue pertaining or relating in any way to a determination, or the Company's right to determine, that a lack of work situation exists recognizing, however, that the issues of whether the lack of work situation, so determined by the Company to exist, is a temporary lack of work situation or a permanent lack of work situation shall be, in itself, an arbitrable issue.
>
> Article XI, REPRESENTATION
>
> Article XVII, LISTS OF HIRINGS, LAYOFFS AND TRANSFER
>
> Article XXII, JURY DUTY
>
> Article XXIII, ABSENCE FOR DEATH IN FAMILY
>
> Article XXV, Paragraph 2
>
> Article XXVI, ISSUES OF GENERAL APPLICATION

The employer answered the complaint, essentially denying all material allegations, and affirmatively pleading that the Collective Bargaining Agreement between the parties provided that certain matters concerning the application of Article X of the agreement are not subject to arbitration and that the subject matter of the grievance which was filed in behalf of the employee was excluded from arbitration by agreement of the parties.

The Union then filed a motion for summary judgment and a memorandum in support, alleging that there were no material facts in dispute and that the Court should enter an order requiring the employer to submit the grievance to arbitration. Subsequently, the employer undertook certain discovery, and after various motions to compel and other motions and responses relative to discovery, the Court permitted certain limited discovery which it felt went only to the issue of whether the parties had agreed to arbitrate the issue which was in dispute. After such limited discovery, the defendant then filed its motion for summary judgment and statement in support, also alleging that there was no material fact in dispute and asking that the Court find that it was not required to arbitrate the grievance that had been filed.

The Court has been blessed with excellent briefs submitted by the attorneys for both parties, and is now prepared to render its opinion which, although not technically required by Rule 52 of the Federal Rules of Civil Procedure, will include findings of fact and conclusions of law, separately stated.

## FINDINGS OF FACT

1. The plaintiff, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, is a labor organization within the meaning of 29 U.S.C. § 152(5), and is the exclusive bargaining representative of a unit of employees at defendant's facility.

2. Local No. 716 is a labor organization within the meaning of 29 U.S.C. § 152(5) and is a creature of the International Union and has joint responsibility with the International in collective bargaining and contract administration at defendant's facility.

3. Defendant, General Electric Company, is a corporation operating a manufacturing business in the State of Arkansas and is an employer within the meaning of 29 U.S.C. § 152(2).

4. The International Union and its Local No. 716 and defendant, General Electric Company, entered into a Collective Bargaining Agreement effective July 17, 1979, through July 16, 1982, and Appendix No. 1 to the complaint filed in this matter is a true and correct copy of such Collective Bargaining Agreement.

5. That the Collective Bargaining Agreement provides for arbitration of certain disputes with respect to interpretation and application of the agreement, including certain of the disputes concerning application of Article X—Seniority, but the agreement specifically excludes "any issue pertaining or relating in any way to a determination, or the company's right to determine, that a lack of work situation exists."

6. On March 3, 1981, the Union filed a written grievance numbered 13484, concerning the employer's failure to recall its employee, Atha Johnson, and Appendix No. 2 to the complaint is a true and correct copy of such grievance.

7. The employer, through its Manager of Plant Operations, denied the grievance by letter dated April 15, 1981, and Appendix No. 3 to the complaint is a true and correct copy of such letter.

8. On May 12, 1981, the Union submitted a written demand for arbitration of the grievance, and Appendix No. 4 attached to the complaint is a true and correct copy of the letter making such written demand.

9. The employer refused to arbitrate the grievance, taking the position that it was not required to do so by the Collective Bargaining Agreement, and this lawsuit resulted.

## DISCUSSION

As was pointed out above, each of the parties has filed a motion for summary

judgment and statement in support, taking the position that there are no genuine issues of any material facts and that the Court should, as a matter of law, decide the question presented in this lawsuit. In its brief in support of its motion for summary judgment the Union correctly points out that, in a series of cases known as the "Steelworkers Trilogy," the United States Supreme Court has severely limited the power of lower federal courts in determining issues such as the one presented in this case. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, and *United Steelworkers of America v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. In *American Manufacturing Co., supra*, 363 U.S. at 567–68, 80 S.Ct. at 1346, the Court stated:

> The function of the court is very limited . . . it is then confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.

In the *Warrior* case, *supra*, 363 U.S. at 581, 80 S.Ct. at 1352, the Court said:

> An order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubt should be resolved in favor of coverage.

In addition to these cases, the plaintiff relies on the cases of *Nolde Brothers, Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of North America*, 627 F.2d 853 (1980); *Local 589, ILGWU v. Kellwood Co.*, 592 F.2d 1008 (8th Cir. 1979).

The Union argues, quite effectively, that the provisions of the Collective Bargaining Agreement quoted above can be interpreted in no other way than to provide that the grievance which is the subject matter of this lawsuit is arbitrable. They argue that, in any event, even if the Court does not accept that argument, the agreement is unquestionably open to that interpretation and, under the holding of the Supreme Court in the *Steelworkers Trilogy* cases of 1960, this Court must order arbitration.

The employer, in its excellent brief filed in this case, recognizes that the well-known *Steelworkers Trilogy* provides the law that must be applied, but also effectively argues that those cases clearly recognize and allow the parties to, by their agreement, exclude certain matters from arbitration. It contends that when that is done, the question of arbitrability becomes one of contract construction and is for the courts to decide.

They point out that the facts of each of the *Steelworkers Trilogy* cases indicate that the collective bargaining agreements being construed by the court in those cases required the parties to submit all grievances to arbitration and provided that the union would not strike under any circumstances. The employer contends that the rule established by these cases is simply that federal policy favors arbitration of labor disputes and when a collective bargaining agreement contains an unconditional no-strike clause and an unconditional arbitration provision, the court should not investigate the merits of the grievance, but should leave the decision on the merits to arbitration. It argues that a broad no-exception to arbitration, no-strike agreement is the *quid pro quo* for the employer's agreement to arbitrate *all* disputes, but that the reserved right of the union to strike if the employer declines to arbitrate an issue is the *quid pro quo* for the company's right to decline arbitration of certain issues. It then points out that not only does the Collective Bargaining Agreement between the parties in this case provide an exception to arbitration, it also allows the Union to strike over those matters excluded from arbitration, citing Article XIII of the agreement. The employer contends that giving the Union the right to strike in those instances is the *quid pro quo*

for the agreement that certain matters would be excluded from arbitration.

Having delineated the respective positions of the parties, and recognizing the limited responsibilities that this Court has, it will now apply the law that it believes applicable to the facts which are largely not in conflict. There is no question but that the Union and General Electric Company entered into a Collective Bargaining Agreement covering a period from July 17, 1979, through July 16, 1982, and that the agreement provided for the arbitration of certain issues which might arise, but excluded others. The agreement contained a no-strike clause but allowed the employees to strike, after the grievance procedure had been followed, where such grievance procedure had not resolved conflicts which were excluded from arbitration. In other words, the agreement excluded certain issues from arbitration, but gave the employees the right to strike over such issues if not resolved by the grievance procedure.

It is not disputed that prior to July 14, 1980, Atha Johnson was employed by the defendant and was classified as a Machinist B at the time of her lay-off on such date. In its response to defendant's request for admission of facts, the Union admitted that: "The lay off of Atha Johnson from the classification of Machinist B on July 14, 1980, was the result of a 'permanent reduction in force' as that term is defined in Article X, Section 5(1) of the 1979–1982 Collective Bargaining Agreement between the parties."

It is admitted that the Union filed a grievance and when the grievance was denied, the Union demanded arbitration and the employer refused, with this lawsuit resulting.

 The Court believes that the *Steelworkers Trilogy* cases did not, under any interpretation, hold that lower federal courts cannot determine the question of arbitrability. The Court believes that the law in this respect is correctly set forth in the Eighth Circuit decision of *Kansas City Royals Baseball Corp. v. Major League Baseball Players Association*, 532 F.2d 615 (8th Cir. 1976), as follows:

A party may be compelled to arbitrate a grievance only if it has agreed to do so. [Citing cases] The question of arbitrability is thus one of contract construction and is for the courts to decide. [Citing cases]

In resolving questions of arbitrability the courts are divided by Congress' declaration of policy that arbitration is the desirable method for settling labor disputes. See § 203 of the Labor-Management Relations Act, 29 U.S.C. § 713(d). Accordingly, a grievance arising under a collective bargaining agreement providing for arbitration must be deemed arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." [Citing cases] Consistent with these principles, a broad arbitration provision may be deemed to exclude a particular grievance in only two instances: (1) where the collective bargaining agreement contains an express provision clearly excluding the grievance involved from arbitration; or (2) where the agreement contains an ambiguous exclusionary provision and the record evinces the most forceful evidence of a purpose to exclude the grievance from arbitration. [Citing cases]

As the Court pointed out in *Gangemi v. General Electric Company*, 532 F.2d 861 (2nd Cir. 1976):

. . . [U]nless a collective bargaining agreement clearly manifests a contrary intent, it is for the courts, not the arbitrator, to decide whether the parties to that agreement have agreed to submit specific disputes to arbitration. [Citing cases] That requirement is, of course, based upon the fact that "[n]o obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Gateway Coal Company v. Mineworkers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38

L.Ed.2d 583, 590 (1974). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Atkinson v. Sinclair Refining Company, supra*, 370 U.S. [238] at 241, 82 S.Ct. [1318] at 1321, 8 L.Ed.2d [462] at 466.

As mentioned at the outset, we recognize and reaffirm the oft-repeated principle that where the interpretation of a contractual arbitration provision may lead to economic warfare rather than to mandatory arbitration, such an interpretation must be the result of "clear and unambiguous" language in the agreement. *Carey v. General Electric Company*, 315 F.2d 499 (2nd Cir. 1963), *cert. denied*, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964). We hold in this case simply that the language in the present contract clearly and unambiguously provides for only voluntary or permissive arbitration of the dispute between the parties and that it was error for the district court to compel arbitration in such a case. (Page 868)

Thus, the law clearly seems to be that a party cannot be compelled by this Court or any other court to submit his grievance to arbitration unless he has contracted to do so. However, because of public policy considerations which encourage arbitration rather than economic warfare, the Court should find that an issue has been excluded from arbitration only from clear and unambiguous language in the agreement.

 In this case, the Court finds that the language contained in the agreement between the parties is clear and unambiguous in this respect, and clearly and unambiguously excludes the grievance which the Union has filed from arbitration. It is clear from a mere reading of the agreement that many matters are excluded from arbitration. Section 1 of Article XIV of the agreement lists the issues and provisions of the contract which are arbitrable, and it should be noted that a number of the issues and articles of the agreement are excluded from arbitration simply because they are not list-

ed. In addition, others are excluded by specific language. This includes the provisions relative to Article X, Seniority, which provides, in pertinent part:

Article X, SENIORITY, excluding any issue pertaining *or relating in any way* to a determination, or the Company's right to determine, that a lack of work situation exists . . . . [Emphasis supplied]

It is undisputed that Atha Johnson was laid off because the company determined that there was not sufficient work for her to do, and has determined that there is still not sufficient work to warrant her recall. How could the language of the agreement any more clearly or any more unambiguously provide that this particular grievance is excluded from the arbitration procedure? The company determined that Atha Johnson was not needed because there was a lack of work and they have declined to recall her for the same reason. How could the drafters of the contract, executed by both parties, have any more clearly provided for an exclusion of this grievance than to say, as they did, that "any issue pertaining or relating in any way to a determination, or the Company's right to determine, that a lack of work situation exists" is excluded. The contract says that if it relates "in any way" to a determination that a lack of work situation exists, then the issue is excluded from arbitration. Certainly, determination by the company that Atha Johnson is not needed because of a lack of work relates in some way to the company's right to so determine and the Court finds that the explicit provisions of the contract clearly and unambiguously exclude such issue from arbitration, and that the language used is not subject to any other interpretation without a strained process of reasoning and logic.

The Union argues:

The Atha Johnson grievance states not simply that work existed which Johnson should have been recalled to perform but that "there is work for a B Machinist being done in W2 by toolmakers. Atha has more seniority than some of the em-

ployees that are now working in the tool room unit." The question put in issue by the grievance is thus not whether a lack of work situation exists but rather to whom existing work should have been assigned under the seniority provisions of the agreement.

The Court agrees with defendant's response to such assertion, contained in its April 20, 1982, letter to the Court which states:

We acknowledge our inability to distinguish any difference, except a minor difference in words, rather than substance, between the statement "that work existed which Johnson should have been recalled to perform," and the statement that "there is work for a B Machinist being done in W2 by toolmakers." Both statements express the basic assertion that there was in fact sufficient Machinist B work to require the use of another Machinist B. This is precisely the decision which the contract in Article XIV excludes from arbitration—an "issue pertaining or relating in any way to a determination, or to the Company's right to determine, that a lack of work situation exists * * *." It is difficult to perceive how the exclusion of this issue from arbitration could be stated more clearly and specifically.

The Court also confesses that it has an inability to distinguish any difference. The company has determined that there is not sufficient work for a B Machinist, and the Union says that there is. The Collective Bargaining Agreement excludes any issue which pertains or relates in any way to a determination by the company that there is a lack of work, so the issue raised by the Union's grievance is clearly excluded from arbitration. To hold otherwise would, in the Court's view, fly in the face of the clear and unambiguous language which so provides.

■ The Union argues that because the parties have treated entitlement to recall as arbitrable in the past, this demonstrates, at the very least, that the agreement may be reasonably interpreted to require arbitration. However, as the employer points out in its brief, the Collective Bargaining Agreement recognizes voluntary arbitration as an option available to either party as a matter of choice and that, even if the Union's contention relative to the earlier arbitration procedure is correct, it proves nothing since it merely shows that the company consented to arbitrate in the first instance and did not in this one.

In short, the Court finds that the grievance which caused this lawsuit results in a difference of opinion as to whether a lack of work situation exists for B Machinists at defendant's plant. Recognizing this Court's limited function in this case, we find that an order to arbitrate this particular grievance should be denied because the language used in the Collective Bargaining Agreement is not susceptible of an interpretation that covers the asserted dispute.

An order will be entered denying plaintiff's motion for summary judgment and granting defendant's motion.

## CONCLUSIONS OF LAW

1. The grievance filed in behalf of Atha Johnson results in a dispute between the employer and the Union as to whether a lack of work situation exists for Machinists B in defendant's plant in Fort Smith, Arkansas.

2. The Collective Bargaining Agreement entered into between the parties specifically, clearly and unambiguously excludes any issue pertaining or relating in any way to a determination, or the company's right to determine, that a lack of work situation exists and that by such explicit terms, the grievance which is the subject matter of this lawsuit is excluded from arbitration.

3. The language describing the exclusion contained in the Collective Bargaining Agreement cannot be reasonably interpreted in any manner other than to exclude the

grievance which is the subject matter of this lawsuit from arbitration.