615 F.Supp. 865 (1985)
BALLWIN-WASHINGTON, INC., Plaintiff,
v.
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT NO. 9, and Rebeca M. Jordan, Defendants.
No. 85-831C(B).
United States District Court, E.D. Missouri, E.D.
August 1, 1985.
*866 Ross Friedman, St. Louis, Mo., and James A. Smith, Atlanta, Ga., for plaintiff.
Janet Young and Cary Hammond, Clayton, Mo., for defendants.

MEMORANDUM AND ORDER
REGAN, District Judge.
This matter is before the Court on motions of plaintiff Ballwin-Washington, Inc. (the "Company") for a protective order and for judgment on the pleadings, and on defendants' motion to compel discovery and defendants' cross-motion for judgment on the pleadings.
Plaintiff brought this action for declaratory relief to set aside an Opinion and Award of an arbitrator, dated March 21, 1985, wherein the arbitrator reinstated defendant Jordan to her job with plaintiff Company. Jordan is an employee of plaintiff Company and is in the bargaining unit represented by Defendant International Association of Machinists and Aerospace Workers, District No. 9 (the "Union"). The Company claims that the award of the arbitrator is null, void, and of no effect because it exceeds the authority granted to the arbitrator by the Collective Bargaining Agreement (CBA) between the plaintiff company and defendant union.
The material facts of this lawsuit are not in dispute:
The Company and the Union were parties to a collective bargaining agreement (CBA). (Complaint, Paragraph 6; Answer, Paragraph 1).
2) Jordan is an employee of the Company and is in the bargaining unit represented by the Union. (Complaint, Paragraph 4; Answer, Paragraph 1).
3) On August 6, 1984, Jordan was advised that her employment was terminated by the Company. (Complaint, Paragraph 13; Counterclaim, Paragraph 6).
4) Pursuant to the CBA, Jordan filed a grievance over her termination which was processed to arbitration. (Complaint, Paragraph 14; Answer, Paragraph 1; Counterclaim, Paragraph 7).
5) An arbitration hearing was held by Arbitrator A. Lee Belcher on January 24, 1985. (Complaint, Paragraph 15; Answer, Paragraph 1; Counterclaim, Paragraph 7).
6) On March 21, 1985, the arbitrator issued an Opinion and Award which found that Jordan had violated the three day  no report provisions of the Collective Bargaining Agreement (Complaint, Paragraph 17; Answer, Paragraph 8; Counterclaim, Paragraph 8).

*867 7) This Opinion and Award rescinded Jordan's discharge and reduced it to a disciplinary suspension with reinstatement of employment and back pay. (Complaint, Paragraph 18, Exhibit A; Answer, Paragraph 8; Counterclaim, Paragraph 8).
The sole question before this Court is the legal question of whether this arbitration award drew its essence from the collective bargaining agreement.
Judicial review of an arbitration award is limited. The Court cannot redetermine the merits of an arbitration award but rather must determine whether the award draws its essence from the collective bargaining agreement. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); W.R. Grace & Co. v. Local Union 759 (Rubber Workers), 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); Manhattan Coffee Company v. International Brotherhood of Teamsters, 743 F.2d 621 (8th Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 2323, 85 L.Ed.2d 842 (1985). The authority of an arbitrator is limited.
An arbitrator is confined to interpretation and an application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
United Steelworkers of America v. Enterprise Wheel & Car Corp., supra 363 U.S. at 597, 80 S.Ct. at 1361. If the arbitrator's award does not draw its essence from the contract, the reviewing court must vacate or modify the award. International Brotherhood of Electrical Workers Local 53 v. Sho-Me Power Corporation, 715 F.2d 1322, 1325 (8th Cir.1983), cert. denied ___ U.S. ___, 104 S.Ct. 1277, 79 L.Ed.2d 682; St. Louis Theatrical Company v. St. Louis Theatrical Brotherhood Local 6, 715 F.2d 405, 407 (8th Cir.1983). The reviewing Court, however, will broadly construe the collective bargaining agreement's grant of power to the arbitrator, with all doubts being resolved in favor of the arbitrator's authority. Id. at 1325; Resilient Floor and Decorative Covering Workers, Local Union 1179 v. Welco Manufacturing Co., 542 F.2d 1029, 1032 (8th Cir.1976).
Our starting point, then, is the collective bargaining agreement between the Company and the Union. Article IX, section 1, of the agreement provides that:
Should any difference arise regarding the interpretation and application of this agreement, the following steps will be followed:
(Steps 1-3 outline the grievance procedure. If settlement fails, the step 4 allows an appeal of the grievance to an arbitrator).
Step 4 then states:
The decision of the arbitrator shall be binding and conclusive upon both parties to this agreement. The arbitrator shall have no power to add to or subtract from or modify any of the terms of this agreement or any agreements made supplemental hereto.
Step 4 apparently limits the authority of the arbitrator strictly to interpretation and application of the agreement. Clearly, the arbitrator may not "add to or subtract from or modify any of the terms" of the collective bargaining agreement. The agreement fails to define the parameters by which the arbitrator is bound when interpreting the collective bargaining agreement. Thus, there is an inherent ambiguity in this CBA: at what point does the arbitrator's "interpretation" of the CBA become "add[ing] to, subtract[ing] from, or modif[ication] of any of the terms" of the agreement?
Our second consideration is the industrial common law,
[t]he labor arbitrator's source of law is not confined to the express provisions of the contract as the industrial common *868 law  the practices of the industry and the shop  is equally a part of the collective bargaining agreement, although not expressed in it.
Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-2, 80 S.Ct. 1347, 1352-3, 4 L.Ed.2d 1409 (1960). The arbitration award did not refer to the industrial common law as an aid in interpreting the collective bargaining agreement. We must, therefore, look to the terms of the CBA to determine whether the arbitration award drew its essence therefrom.
The Supreme Court has never clearly delineated what factors should be considered in determining whether an arbitration award draws its essence from the collective bargaining agreement. The Third Circuit has shed some light on this phrase, holding that an arbitration award draws its essence from the collective bargaining agreement and must be upheld "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context and any other indicia of the parties intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3rd Cir. 1969), cited in Super Tire Engineering Co. v. Teamsters Local Union No. 676, 721 F.2d 121 (3rd Cir.1983).
The Eighth Circuit follows a similar standard. The Eighth Circuit looks to the four corners of the agreement between the parties to determine whether the arbitrator has exceeded his authority in making an award. Truck Drivers and Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562, 563 (8th Cir.1964). The authority to make an arbitration award must be found or legitimately assumed from the terms of the arbitration agreement. Id. at 563. "Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." W.R. Grace & Co. v. Local Union 759, supra, 461 U.S. at 765, 103 S.Ct. at 2183.
To determine whether the arbitrator exceeded his authority in rendering a particular award, the Court must first determine what portions of the CBA the arbitrator was asked to interpret and apply. This requires the Court to examine the grievance actually submitted to the arbitrator. Then the Court must examine the arbitrator's decision to determine which provisions of the CBA the arbitrator did in fact interpret and apply.
The Company framed the issue submitted to the arbitrator as follows: Whether the Grievant's termination violated the collective bargaining agreement. The Union framed the issue submitted to the arbitrator in this manner: Was the termination of Rebeca Jordan for failure to call in on Saturday, August 4, 1984, for just cause or was it not?
In his Opinion and Award, the arbitrator found certain facts to have been clearly established:
1) Ms. Jordan was absent from work from Monday July 30, 1984 through Saturday August 4, 1984;
2) Jordan had statements from her doctor dated July 31, 1984 and August 3, 1984, which indicated that Jordan was pregnant and that she was suffering from a viral infection;
3) Jordan had telephoned her supervisor, Ray Bryan, on Monday, July 30, 1984 and on Wednesday, August 1, 1984, concerning her illness and absence from work;
4) Ms. Jordan learned during the Wednesday call (8/1/84) "that the plant was scheduled to operate on Saturday", (8/4/84).
Finding these facts, the arbitrator also determined that
"it was the negotiated intent of the parties that whenever employees are scheduled to work on Saturdays they are to treat that overtime day the same as a regular work day for purposes of the three day-no report rule which is spelled *869 out in General Rule No. 6 and Article II and clarified in Article V of the Agreement. Accordingly, I find that technically Jordan was in violation of this rule although it is not believed that the grievant knowingly violated the rule, a factor that deserves serious consideration." (emphasis supplied).
Nowhere in the Opinion and Award did the arbitrator specify what provisions of the CBA he was interpreting and applying. The arbitrator's Opinion and Award makes no reference to Article I, Section 2 of the CBA which states:

Section 2. The Union hereby recognizes the right of the Company to manage its plants, to select and hire, to lay off, to part-time, to promote to a better position, to discharge, demote or discipline for cause to establish safety, work and quality rules and standards, to change materials, processes, equipment, products and technology and to maintain discipline and efficiency of employees and to determine the schedules of work as the proper responsibility and prerogative of management, to be held and exercised by the Company subject to the provisions of this Agreement. (Emphasis supplied).
In their Memorandum in Support of Defendants' Cross-Motion for Judgment on the Pleadings, defendants suggest that since this management-function recognition provision is found in the CBA, and since other arbitrators have expressly relied on similar (but not identical) provisions in other cases to mitigate the harshness of mandatory discharge, provisions found in other CBA's, that somehow we are bound to find that the award below draws its essence from the collective bargaining agreement despite the fact that the arbitrator has nowhere considered this section or any requirement of "cause" for dismissal in his Opinion and Award.[1]
Given the parties' vague framing of the grievance submitted to the arbitrator and given the vagueness of the CBA itself with respect to termination of employees, it is not surprising that the arbitrator's Opinion and Award is not a lesson in clarity. The Opinion and Award made no specific finding on either the Company's or the Union's view of the grievance submitted. The arbitrator made no finding on the question of whether Jordan's termination violated the CBA[2], nor did the arbitrator make any finding on the question of whether or not Jordan's termination was for just cause.[3]
The arbitrator failed to explicitly find that Jordan was scheduled to work on Saturday, August 4, 1984, although that finding is implicit in his holding that Jordan was technically in violation of the three day  no report rule. The arbitrator did find that the plant was scheduled to operate on Saturday August 4, 1984. The arbitrator failed to explicitly find that Jordan was notified by the Company that she was required to work Saturday overtime on Wednesday, August 1, 1984, although this finding is also implicit in the arbitrator's holding. There was no express finding that the overtime notification requirement, as set forth in Article V, Section 6 of the CBA, was met by the Company. The CBA *870 does not specify any particular method for notifying employees of the scheduling of overtime work. Article V., Section 6 of the CBA, allows employees to decline scheduled overtime periodically without prejudice. The arbitrator made no explicit finding that Jordan had or had not exercised her contractual right to decline scheduled overtime. The arbitrator did find, however, that "[f]rom that conversation] on Wednesday, August 1, 1984, Bryan had no reason to believe that Jordan would be at work on Saturday or any day earlier."
The CBA does not specify any method for declining overtime work. Article V, Section 6 of the CBA, is clear in stating that "[e]mployees who are absent during the week may or may not be scheduled for overtime." Article V, Section 7 provides that "[a]bsence from scheduled overtime work ... shall be treated as absence from work as in any other scheduled workday subject to the same disciplinary procedure."
General Work Rule No. 61, CBA, Article II (Section 4) and CBA Article V clearly state that termination is the sole disciplinary action available for violation of the three day  no report rule. The CBA clearly states that "the arbitrator shall have no power to add to, subtract from, or modify any of the terms" of the CBA. "The findings of an arbitrator should be explicit enough to give the reviewing court a clear understanding of the basis of the arbitrator's decision, and to enable it to determine the ground on which the arbitrator reached his decision." Vulcan-Hart v. Stove, Furnace & Allied Appliance Workers, 516 F.Supp. 394, 396 (fn. 9) (D.C.Mo. 1981), aff'd, 671 F.2d 1182 (8th Cir.1982). Because we are unable to determine the ground on which the arbitrator reached his decision, we must vacate the Opinion and Award. Alternatively, we find that once the arbitrator found that Jordan "technically violated" the three day  no report rule, he "dispense[d] his own brand of industrial justice" by imposing a form of discipline not provided for in the CBA. The arbitrator was not authorized to determine whether the contractually-mandated discharge was an appropriate penalty for violation of the three day  no report rule. Thus, as a matter of law, the arbitrator's award did not "draw its essence from the collective bargaining agreement." Riceland Foods, Inc. v. United Broth. of Carpenters and Joiners of America, 737 F.2d 758, 760 (8th Cir.1984). The arbitrator is not free to "dispense his own brand of industrial justice." Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361. Here, the award of the arbitrator is so unfounded in reason and in fact as to manifest an infidelity to his obligation to frame an award which draws its essence from the collective bargaining agreement. Wagner Division v. Local 1104, 583 F.Supp. 239, 248 (D.C.Mo.1984). Accordingly, the arbitration award must be vacated.
Since the material facts are not in dispute, and since plaintiff has shown it is entitled to judgment as a matter of law, judgment on the pleadings is appropriate. Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of North America, 627 F.2d 853, 855 (8th Cir.1980).
Applying the legal standard discussed above, this Court finds that the arbitrator's award did not draw its essence from the collective bargaining agreement. Accordingly, the arbitration award must be VACATED. Judgment will be entered for plaintiff and against defendants declaring the March 21, 1985 Opinion and Award of Arbitrator A. Lee Belcher, to be null, void, and of no effect. Judgment will likewise be entered for plaintiffs and against defendants on defendants' counterclaim which sought enforcement of the arbitration award. Defendants' motion to compel discovery is hereby OVERRULED AS MOOT.
Plaintiff's motion for protective order is also hereby OVERRULED AS MOOT.
A judgment will be entered in accordance with this memorandum.
NOTES
[1] The Kewanee Machinery (Kewanee Machinery Division v. Local Union No. 21, 593 F.2d 314 (8th Cir.1979)) case differs from the instant case in several respects.

1. The Kewanee company's absenteeism policy was unilaterally established. Discharge for absence was not a disciplinary sanction set forth in the CBA. Here, the absenteeism policy was a bilaterally bargained contractual provision.
2. The Seniority/Continuous service provision of the Kewanee CBA provided that:
Seniority shall be broken and all employment relations terminated when an employee ... is discharged for proper cause. (Emphasis added).
In the instant case, the seniority/continuous service provision (Article II, Section 4) provides that:
(t)he continuous service of any employee shall terminate when:
... 4. An employee is discharged for proper cause.
5. An employee has three (3) consecutive working days of unreported absence.
We note that these subsections are separate and independent grounds for termination.
[2] Company's framing of the issue.
[3] Union's framing of the issue.