ADOREABLE PROMOTIONS,
INC., Plaintiff,

v.

AUSTIN PROMOTIONS, INC., Harold McElyea, Billy McElyea, Gary McElyea, and Clint McElyea, Defendants.

Civil No. 00–5134.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Dec. 4, 2000.

John M. Scott, Everett Law Firm, Fayetteville, AR, for plaintiff.

Matthew C. Carter, Warner, Smith & Harris, PLC, Fort Smith, AR, for defendants.

## MEMORANDUM OPINION

HENDREN, District Judge.

On this 4th day of December, 2000, comes on for consideration plaintiff's motion for judgment on the pleadings (document # 25) and plaintiff's proposed findings of fact and conclusions of law (document # 27) and the Court, being well and sufficiently advised that defendants will object neither to plaintiff's motion nor to the Court's entry of judgment on the pleadings, finds and orders as follows:

1.  The plaintiff, AdoreAble Promotions, Inc. ("API" or "plaintiff") is a Michigan corporation with its principal place of business in Bay City, Michigan. The plaintiff conducts sub-novice elimination boxing

tournament events and is conducting business in the state of Arkansas under the trade name "Toughman Contest."

2. Separate defendant Austin Promotions, Inc. ("Austin"), is an Arkansas corporation with its principal place of business in Fort Smith, Arkansas. Austin was incorporated on or about May 16, 2000. Separate defendant Harold McElyea is an individual who resides in Muldrow, Oklahoma. Harold McElyea is the father of separate defendants Gary, Billy and Clint McElyea, individuals residing in Muldrow, Oklahoma; Barling and Fort Smith, Arkansas, respectively.

3. Plaintiff filed this action against defendants on July 11, 2000. It is alleged therein that separate defendants Harold McElyea, Gary McElyea, Billy McElyea, and Clint McElyea have violated, *inter alia*, the Trade Mark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1051, *et seq.*, by promoting and conducting sub-novice boxing events which unlawfully infringe upon plaintiff's registered service marks, trademarks, and inherently distinctive, non-functional trade dress. Plaintiff's complaint also alleges infringement under the common law and unfair competition under the Lahnam Act and seeks preliminary and permanent injunctions; monetary damages; and attorney's fees and costs.

4. On August 18, 2000, plaintiff filed a motion for preliminary injunction. Defendants responded and the Court conducted a hearing on the motion on September 6, 2000, in Fort Smith, Arkansas. At the call of the Court, all parties appeared through counsel of record and represented that an agreement had been reached regarding plaintiff's request for injunctive relief. On September 7, 2000, the Court entered its Order approving the parties' settlement of the issue and granting plaintiff a preliminary injunction in accordance with the agreed upon terms.

5. On October 11, 2000, plaintiff was granted leave to file an amended complaint which was accomplished on October 13,

2000. Defendants filed their answer to the amended complaint on October 26, 2000.

6. On November 1, 2000, plaintiff filed its motion for judgment on the pleadings along with its proposed findings of fact and conclusions of law. On November 14, 2000, defendants notified the Court by letter that no response to the motion would be forthcoming.

7. The Court has subject matter jurisdiction over this matter. 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1337, 1338; 28 U.S.C. § 1367. There has been no challenge to the Court's exercise of personal jurisdiction over the parties. Venue is proper in this Court. 28 U.S.C. § 1391.

### Judgment on the Pleadings

8. Judgment on the pleadings is appropriate where the moving party has "clearly established that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." *National Car Rental Sys., Inc. v. Computer Associates International, Inc.*, 991 F.2d 426, 428 (8th Cir.1993); *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters*, 627 F.2d 853 855 (8th Cir.1980). If matters outside the pleadings are part of the Court's consideration of the motion for judgment on the pleadings, then the Court shall treat the motion as one for summary judgment under Rule 56. *See* F.R.Civ.P. 12(c). The Court should "assume that well-pleaded factual allegations in the complaint are true and 'construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader.' " *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). The motion should be granted if "it appears beyond doubt that the [nonmoving party] can prove no set of facts which would entitle him to relief." *Westcott v. City of Omaha*, 901 F.2d 1486, 1489 (8th Cir.1990)

### Factual Findings

9. The Court herein sets forth the unchallenged factual basis for plaintiff's motion for judgment on the pleadings:

a. In 1979, Art Dore (founder and previous president of API's predecessor) started the original "Toughman Contest" in Bay City, Michigan. API's Toughman Contest consists of an elimination contest, with fighters competing in bouts of three very short rounds. Art Dore is believed to have conceived of this format of boxing which was so unique that API had to lobby numerous states for legislation to accommodate this form of competition.

b. Fighters wear sixteen (16) ounce gloves, padded headgear and a kidney protector. The Toughman Contest typically has two weight divisions—heavyweight and light heavyweight—and sometimes includes a women's division depending upon the participation level at a particular event. In the Toughman Contest, the fighters compete once on Friday and winners return on Saturday to eliminate down within their weight bracket until a winner is chosen in each division.

c. The marketing of the Toughman Contest consists of direct, confrontational "challenge" advertisements, daring the fighters to test his or her "toughness" in the contest. Prior to the plaintiff's development of such promotion techniques, this "challenge" style had not been utilized in boxing.

d. Since its creation, over 75,000 contestants have competed in Toughman events, producing such notables as Mr. T, Tommy Morrison, Christy Martin (known as the world's best pound-for-pound female boxer), and Butter Bean, the King of Four Rounders

e. The popularity of the Toughman Contest has led to the creation of Sega Genesis and Nintendo "Toughman" games. Twentieth Century Fox made a movie about the Toughman Contest, entitled *Tough Enough*, starring actors Dennis Quaid and Warren Oates. Moreover, the FX Network has featured the Toughman Contest on Friday nights at 10:00 p.m. and has enjoyed favorable ratings.

f. Since 1979, the plaintiff has operated contests using the service mark "TOUGHMAN CONTEST" as well as the associated slogan "How Tough Are You?" The plaintiff has packaged its boxing product through a combination of rules and regulations, as well as promotional and visual elements which, taken together, create a distinctive visual impression. When these elements are viewed by the public, they serve to identify their source—AdoreAble Promotions, Inc.

g. In order to protect its unique marks and prevent future improper use by others, the plaintiff lawfully applied for and obtained from the United States Patent and Trademark Office registration of the service marks "TOUGHMAN CONTEST," "TOUGHWOMAN CONTEST," and the challenge phrase "How Tough Are You?" under registration numbers 2,291,175; 2,291,184; and 2,291,185.

h. The plaintiff's product is the original Toughman Contest: a one-on-one, two day sub-novice amateur boxing elimination tournament. The Toughman Contest packaging is a distinctive, non-functional trade dress which has acquired a secondary meaning in that it is suggestive and identifies its source, API and its Toughman elimination tournaments.

i. In addition to the above-referenced marks, API sells its services under the "Toughman" and "Toughman Contest" marks which embody a family of distinctive and famous design marks and trade dress. API's trade dress is comprised of over twenty-five elements and consists of the total image and appearance of the event, from its marketing and advertising through the awarding of the champion. These elements of trade dress are non-functional, have acquired secondary meaning, and others' use of them is likely to create confusion in commerce and with the public.

j. API delivers a high quality product with its Toughman Contests. Toughman Contests are held at top-flight venues. API provides a licensed medical doctor who performs a physical on all fighters prior to competition. Emergency medical technicians are on site throughout the

event. API provides trained referees and high quality equipment to ensure the safety of participants, including an "apron" which surrounds the ring to prevent a fighter who happens to fall through the ropes from being injured.

k. API has held numerous Toughman Contests in Arkansas, including Fort Smith, Springdale, Little Rock, and Texarkana and vigorously protects its name, reputation and intellectual properly interests.

l. On or about May 10, 2000, the plaintiff learned that defendants were planning an event utilizing elements that were confusingly similar and/or identical to the plaintiff's trade/service marks, trade dress and other format elements ("intellectual property"). The defendants' proposed event was scheduled for May 12–13, 2000, at John Q. Hammons' Holiday Inn Northwest Arkansas Hotel and Convention Center in Springdale, Arkansas (hereinafter "the Springdale Rough Neck Contest"). The plaintiff had just recently held its Toughman Contest at the same facility, and the plaintiff has a contract to conduct future Toughman Contests at the same facility. Plaintiffs also learned that defendants had misappropriated its intellectual property in order to advertise, promote and stage a contest being referred to as the "Rough Neck Contest."

m. Separate defendant Austin Promotions, Inc. was not registered with the State of Arkansas at the time the defendants were promoting the Springdale Rough Neck Contest. Defendant Harold McElyea entered into contracts in his individual capacity and paid expenses out of his personal funds and the individual defendants acted together, and in their individual capacities, in promoting the Springdale Rough Neck Contest.

n. In conducting its Toughman Contests, plaintiff utilizes unique flyers, information sheets, and entry forms. The defendants were familiar with and possessed copies of the same or similar materials. Harold McElyea provided copies of written Toughman materials to the advertising agency that produced defendants' promotional materials. In promoting the Springdale Rough Neck Contest, defendants utilized flyers, entry forms, and challenge advertising techniques which were virtually identical to plaintiff's promotion techniques.

o. Plaintiff received misdirected inquiries from individuals wanting to participate in the Rough Neck Contest. These individuals understood that the Rough Neck Contest was actually a Toughman Contest being sponsored by the plaintiff.

p. The American Boxing & Athletic Association ("ABAA") is a non-profit corporation which works with and is dedicated to the promotion of amateur and other boxing events. In their promotional literature, the defendants falsely and recklessly represented that the Springdale Rough Neck Contest was sanctioned by the ABAA.

q. The ABAA informed API that it had not been contacted by the defendants and that it had not sanctioned the proposed Springdale Rough Neck Contest. The ABAA strongly objected to defendants' false assertion that their event was ABAA sanctioned.

r. Counsel for API contacted separate defendant Harold McElyea and representatives of the Northwest Arkansas Hotel and Convention Center to advise that the Springdale Rough Neck Contest planned for May 12–13, 2000 constituted intentional infringement upon API's trademark, service mark, and trade dress rights. API threatened to file a lawsuit and after hours of negotiation, defendants canceled the proposed Springdale Rough Neck Contest.

s. On May 11, 2000, counsel for API confirmed cancellation of the May 12–13 event and placed defendant Harold McElyea on notice that any future infringement upon API's rights would be met with litigation. Harold McElyea assured Lydia Robertson, API's Arkansas promoter, that he would not conduct any events which were confusingly similar to the Toughman Contest.

t. On the morning of June 23, 2000, API learned that the defendants had scheduled a contest for June 23–24, 2000 in Fort Smith, Arkansas, which was billed as a "Rough Neck Contest." API learned of the Fort Smith Rough Neck Contest less than twelve hours before it was scheduled to begin at 8:00 p.m. June 23, 2000.

u. API immediately investigated the promotional methods and competitive elements of the Fort Smith Rough Neck Contest and determined that defendants' promotional methods unlawfully traded upon numerous of API's intellectual property rights. The defendants' promotional flyers again falsely stated that the Rough Neck Contest was sanctioned by the ABAA despite having been informed that the ABAA would not sanction any event sponsored by the defendants. The defendants also employed "challenge" advertising strikingly similar to the plaintiff's advertising and promotional methods and which was calculated to cause confusion as to the origin of the Rough Neck Contest. Separate defendant Harold McElyea utilized business cards bearing one of API's federally registered service marks "[H]ow tough are you?"

v. Through counsel, API delivered a letter to Harold McElyea in which API warned Mr. McElyea not to go forward with the Fort Smith Rough Neck Contest if he intended to utilize API's trade/service marks or trade dress. Despite the foregoing, the event was carried out by defendants as planned.

w. The Fort Smith Rough Neck Contest was carried out in a manner directly intended to copy API's intellectual property, and the event was intended to trade on API's good will and reputation. Among other things, the Fort Smith Rough Neck Contest utilized:

(1) a two-day, elimination adult, sub-novice boxing tournament format;

(2) with three very short rounds;

(3) using head gear and sixteen (16) ounce gloves;

(4) spanning two evenings;

(5) having loud music playing and ring girls;

(6) utilizing a live announcer during the bouts who repeatedly used the phrase "Get it! Get it! Get it!" a phrase coined and utilized for years by API's founder Art Dore;

(7) using the exact same weight classifications as employed By API;

(8) offering the same prizes as offered by API;

(9) copying the plaintiff's numerous promotional methods;

(10) putting fighters in a pit area without information as to whom or when they will fight;

(11) paying only the top two fighters in each weight division; and

(12) otherwise holding an event designed to be a "copy-cat" of the plaintiff's Toughman Contests.

w. Despite the similarities, the quality and safety precautions of the Fort Smith Rough Neck Contest were far inferior to that of Toughman Contests. This inferiority was demonstrated by, among other things, the absence of an apron around the ring; the absence of emergency medical care visibly available on-site; and the presence of a "referee" outfitted in overhauls and sandal-style shoes. The defendants also failed to comply with all state and local permitting, insurance and regulatory requirements for holding a boxing event.

x. Participants, attendees, and the public at large were actually confused as to the sponsor of the Fort Smith Rough Neck contest. Many who participated in or attended the event stated that they believed they were at a "Toughman Contest."

y. The confusion created by the defendants' Rough Neck Contests is likely to hinder the success of the plaintiff's future Arkansas events by

* diluting the pool of fighters;

* hindering API's ability to maintain favorable partner/sponsor relationships;

* confusing the public;

* reducing API's ability to attract public attendance; and

* otherwise injuring the plaintiff's ability to hold successful events.

### Legal Conclusions

10. As noted above, the defendants have notified the Court that they will not oppose the plaintiff's motion for judgment on the pleadings and request for injunctive relief. Accordingly, the Court has considered the undisputed facts and in light of governing law, makes the following legal conclusions:

### Lanham Act

a. Plaintiff has obtained rights in its service marks by means of registering with the United States Patent and Trademark Office.

■ b. The plaintiff's format for promoting and holding its elimination tournaments is inherently distinctive, non-functional trade dress.

■ c. Plaintiff's service marks and trade dress have acquired secondary meaning in the relevant market.

■ d. In promoting the Springdale Rough Neck Contest and promoting and conducting the Fort Smith Rough Neck Contest, defendants have, without the plaintiff's consent, unlawfully used the plaintiff's marks and trade dress in commerce and in connection with the offering of services.

e. Defendants use of plaintiff's intellectual property has caused, and is likely to cause in the future, mistake, confusion and deception. 15 U.S.C. § 1114; *Gaston's White River Resort v. Rush,* 701 F.Supp. 1431 (W.D.Ark.1988), citing *General Mills v. Kellogg Co.,* 824 F.2d 622 (8th Cir.1987).

f. Accordingly, plaintiff is entitled to an Order permanently enjoining defendants' violation of the plaintiff's rights in their registered marks and trade dress. 15 U.S.C. § 1116(a).

### Common Law Trademark Infringement

g. The plaintiff enjoys superior common law service mark and trade dress rights in its elimination boxing tournaments.

h. The defendants have used and threaten to continue to use in commerce a reproduction, counterfeit, copy or imitation of the plaintiff's legally protectable marks and trade dress in connection with the offering and advertising of its Rough Neck Contest which dilutes and reduces the value of the plaintiff's common law service mark rights.

i. The defendants' acts have deceived and confused the public. Such acts constitute infringement upon the plaintiff's common law service mark rights and trade dress. 15 U.S.C. § 1125; *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768–70, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

j. Accordingly, plaintiff is entitled to an order permanently enjoining such wrongful conduct. 15 U.S.C. § 1116(a).

### Unfair Competition

k. The above-referenced actions of the defendants have resulted in actual confusion of the public.

l. The defendants' conduct of past and future Rough Neck Contests has, and is likely to, lead the public to believe that the defendants' services are actually the services of the plaintiff. Such confusion trades upon and undermines the goodwill and business reputation developed by the plaintiff.

■ m. Defendants' actions amount to unfair competition, palming off, passing off and misappropriation of the plaintiff's good will, reputation and common law rights and constitute common law unfair competition and unfair competition under the Lanham Act. 15 U.S.C. § 1125; *Home Builders Assn. of Greater St. Louis v. L & L Exhibition Management, Inc.,* 226 F.3d 944, 947 (8th Cir.2000).

n. Accordingly, defendants' acts of unfair competition should be permanently enjoined. 15 U.S.C. § 1116(a).

11. For these reasons, the Court finds plaintiff is entitled to an Order of this Court, permanently prohibiting and enjoining defendants from:

a. Infringing on plaintiff's registered and unregistered but valid and enforceable trade and service marks;

b. Infringing on plaintiff's protected trade dress;

c. Falsely and deceptively advertising goods and services in a manner which causes the public to believe them substantially or indistinguishably similar to plaintiff's goods and services;

d. Wrongfully disparaging plaintiff's goods and services in commerce; and

e. Engaging in unfair competition against plaintiff with respect to plaintiff's protectable intellectual property rights.

12. A Judgement and Order of Permanent Injunction shall be entered contemporaneously granting plaintiff judgment on the pleadings and awarding said injunctive relief. Damages have neither been requested nor awarded and any claim by plaintiff for damages shall be dismissed.

13. The Court retains jurisdiction over the parties and subject matter to the extent necessary to enforce the Court's Order of injunctive relief.

**IT IS SO ORDERED.**