NATIONAL CAR RENTAL SYSTEM, INC., Appellee,

v.

COMPUTER ASSOCIATES INTERNATIONAL, INC., Appellant.

No. 92–1683.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1992.

Decided April 6, 1993.

---

Allen W. Hinderaker, Minneapolis, MN, argued (Bruce H. Little and Polly A. Maier, on the brief), for appellant.

Peter J. Frazza, Short Hills, NJ, argued (Donald P. Jacobs and Vincent J. Proto, on the brief), for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

MAGILL, Circuit Judge.

We here deal with the difficult question of the extent to which the Copyright Act preempts state breach of contract actions alleging that the licensee of computer software exceeded limitations on the use of computer software contained in the license agreements. Computer Associates International, Inc., appeals from the district court's order resolving a motion for judgment on the pleadings and dismissing its breach of contract claim against National Car Rental as preempted under the Copyright Act. We conclude that the district court failed to grant Computer Associates all reasonable inferences from its pleadings, and hold that as properly construed, the cause of action as pled is not preempted. We reverse.

## I. BACKGROUND

Computer Associates International, Inc. (CA), creates and licenses computer software. CA licensed its programs to the appellee, National Car Rental Systems, Inc. (National), to process National's data on National's hardware in Bloomington, Minnesota. The 1990 license agreement between CA and National provided, as did earlier licenses, that National may use the licensed programs "only for the internal operations of Licensee and for the processing of its own data." A separate order form, incorporated into the license agree-

ment, similarly provided that "use of the Licensed Program[s] is restricted to the internal operations of Licensee and for the processing of its own data."

Sometime in 1990, National decided to cease its internal computer operations and contract with an independent computer services vendor for computer related information services. Ultimately, National retained Electronic Data Systems Corporation (EDS) to provide these services. In connection with this transaction, National, EDS, and CA entered into a supplement addendum, which provided that EDS could use the licensed programs to process National's data. The supplement addendum provided that EDS would use the programs for the benefit of National subject to the terms and conditions of the 1990 license agreement, and solely "to process data of Licensee and in no event for the processing of data ... of any third party other than Licensee."

CA subsequently determined that National had been using the programs to process the data of third parties, including Lend Lease Trucks, Inc. (Lend Lease), and Tilden Car Rental, Inc. (Tilden), in violation of the license agreement, and that such use had continued through EDS under the supplement addendum. CA threatened to sue National if such use did not stop. National then brought a declaratory judgment action in the district court. National admitted in its complaint that it "has used the Licensed Software in its business activities ... including the activities relating to Tilden and Trucks [Lend Lease]," but requested a declaration that its use of the programs neither breached the license agreement nor infringed CA's copyright. CA asserted two counterclaims. In the first, it claimed that National's use of the programs, either individually or through EDS, for the benefit of Lend Lease and Tilden, breached the license agreement. In the second, CA claimed that National infringed its copyright by making an unauthorized copy of the software.

National moved for judgment on the pleadings under Rule 12(c), alleging that CA's first counterclaim was preempted under § 301(a) of the Copyright Act. In resolving the motion, the district court concluded that CA alleged a lease agreement between National and the third parties: National permitted them to use the software in exchange for payment. The district court concluded that this cause of action, as pled, was "equivalent" to the exclusive copyright right of distribution of copies of the work, and held it was preempted.

## II. DISCUSSION

### A. Standard of Review

We review a motion for judgment on the pleadings de novo. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990). The standard is strict: judgment on the pleadings is not appropriate unless the moving party has "clearly establishe[d] that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters*, 627 F.2d 853, 855 (8th Cir.1980). This court must accept as true all facts pled by the non-moving party, and grant all reasonable inferences from the pleadings in the non-moving party's favor. *Id.* Thus, we must determine whether CA's first counterclaim, as pled, may reasonably be read only as a claim preempted by the Copyright Act.

The Copyright Act provides the exclusive source of protection for "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" of the Copyright Act. *See* 17 U.S.C. § 301(a). Concomitantly, all nonequivalent rights are not preempted. A state cause of action is preempted if: (1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106.[1]

1. The Copyright Act, 17 U.S.C. § 106, states as follows:

Subject to sections 107 through 118, the owner of copyright under this title has the

*Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir.1983).

We cannot tell from the district court's memorandum opinion whether the district court concluded the cause of action was preempted because the district court believed CA had alleged National actually distributed a copy of the program to Lend Lease and Tilden, or whether the district court concluded that the allegation of use by National for Lend Lease's and Tilden's benefit was preempted even absent an actual distribution. Therefore, we first examine CA's pleadings to determine whether the district court gave it the benefit of all reasonable inferences from the pleadings. On this standard, we determine that CA's pleadings cannot be read to allege that National actually distributed a copy of the program to Lend Lease or Tilden. Instead, CA's pleadings must be read to allege that National breached their contract by using the program itself, or through EDS, to process data for Lend Lease and Tilden. We then examine whether so construed, the cause of action is preempted.

## B. Characterization of CA's Pleadings

Because the question here depends upon the proper interpretation of CA's first counterclaim, we set it out in some detail. In the first counterclaim, CA alleged, in pertinent part, that:

> The authorization for use granted National [pursuant to the 1990 License Agreement] was for the internal operations of National and for the processing of its own data. (First Counterclaim, ¶ 31)
>
> Pursuant to the Supplement Addendum ... it was agreed that the Licensed Programs would be used solely for the benefit of National and subject to the rights,

obligations and benefits in all respects of the terms and conditions of the License Agreement. (First Counterclaim, ¶ 32)

> Pursuant to the Supplement Addendum ... National and EDS further agreed, among other things, to use the Licensed Programs ... solely to process data of National and in no event for the processing of data of any third party other than National. (First Counterclaim, ¶ 33)
>
> ... In none of the License Agreements was [National] granted any authorization to use the licensed programs for the benefit of any company other than itself. (First Counterclaim, ¶ 35)
>
> ... National has used and permitted the use of the Licensed Programs for the processing of data for the benefit of third parties. This use of the Licensed Programs for the benefit of third parties includes the use for Lend Lease Trucks, Inc. and Tilden Car Rental, Inc. (First Counterclaim, ¶ 36)
>
> ... National has been unjustly enriched by any fees or other compensation received from those third-parties for use of the Licensed Programs for their benefit. (First Counterclaim, ¶ 37)

The district court noted that the computer software in question was within the subject matter of copyright, and thus focused on whether CA's breach of contract action sought to protect rights equivalent to the exclusive copyright rights. The court noted that National had not alleged which copyright right was equivalent to CA's action, but concluded that the distribution right was the only right potentially equivalent.

In resolving the preemption issue, the court concluded that "[c]onstrued as true, CA's allegations reflect the existence of a

exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

lease arrangement between National and Lend Lease and Tilden: National has permitted Lend Lease and Tilden to use the licensed software in exchange for payment. The distribution right includes specifically the right to lease or lend." Mem. op. at 9–10. The court further concluded that the presence of a contract promise did not create a right qualitatively different from copyright, and stated: "In essence, CA alleges National breached the license agreement by infringing CA's copyrights in the licensed software." *Id.* at 10.

We believe that in reaching this conclusion, the district court either failed to give CA the benefit of all reasonable inferences from the pleadings or misinterpreted the law of copyright preemption. We first assume that the district court concluded an actual distribution had occurred.

■■■ Given our standard of review, we do not believe that CA's complaint may be read to allege that National actually distributed the program. The copyright holder's distribution right is the right to distribute *copies*. *See* 17 U.S.C. § 106(3). Section 106(3) grants the copyright owner the "exclusive right publicly to sell, give away, rent or lend any *material embodiment* of his work." 2 Nimmer on Copyright § 8.11[A], at 8–123 (emphasis added). An examination of CA's pleadings demonstrates that they cannot reasonably be read to complain about wrongful distribution. First, the contract provisions CA alleges are at issue place limits upon the way those in rightful possession of a copy of the program can use that copy. The provisions do not prohibit National or EDS from giving a *copy* of the program to anyone else. Second, CA does not specifically allege that National gave a copy of the program to Lend Lease or Tilden. CA alleges that "National has used and permitted the use of the Licensed Programs for the processing of data for the benefit of third parties." CA did not allege use *by* Lend Lease and

Tilden, but instead alleged use for their benefit.[2]

The only potential allegation of unauthorized distribution comes in CA's contention that National "permitted the use" of the programs. Because we must give CA the benefit of all reasonable inferences from the pleadings, we cannot conclude that an allegation that National "permitted the use" necessarily amounts to an allegation of the actual distribution of a copy of the program. Rather, we believe that such a pleading can be read, in context, to allege that National permitted EDS to use the programs for the benefit of Lend Lease and Tilden, with no copies ever going to Lend Lease and Tilden. EDS, however, was authorized under the supplement addendum to have a copy of the program. Thus, given our standard of review, we cannot read CA's pleadings to allege that National breached the contract by wrongfully distributing a copy of the program.

■■■ The district court's conclusion that the pleadings alleged a lease agreement does not change our conclusion. The exclusive right to lease a copyrighted work is derivative of the right to distribute, which, as we noted, is the right to distribute copies. *See* 17 U.S.C. § 106; Nimmer, *supra*, at § 8.11[A]. Allegations of a lease agreement thus cannot expand that distribution right; the right to lease must be the right to lease a copy. Because the pleadings cannot properly be read to allege distribution of a copy, neither can they be read to allege a lease of a copy.

We thus conclude that CA's pleadings cannot be read to allege that National breached its contract by actually distributing a copy of the licensed program to either Lend Lease or Tilden.

## C. Preemption of the Contractual Limitation on Use

■■■ The question then becomes whether CA's allegation that National breached

---

2. CA moved for reconsideration of the initial decision on the pleadings. In the papers surrounding that motion, National admitted that it never gave a copy of the program to Lend Lease or Tilden, but rather processed data for those companies on its equipment. We have, however, decided to evaluate in this appeal the soundness of the initial decision to grant judgment on the pleadings. Because we hold that judgment on the pleadings was improperly granted, we do not consider the district court's disposition of the motion for reconsideration.

their contract by using the program in a fashion not allowed under the contract protects a right equivalent to one of the exclusive copyright rights. We believe it does not.

We agree with the district court that the computer program in question is within the subject matter of copyright. Thus we focus on the second preemption issue: whether the right sought under state law is equivalent to the exclusive rights under copyright. We must consider whether a limitation on the uses to which a licensee may put a licensed work are preempted even though those uses do not involve the exclusive copyright rights. As noted above, courts and commentators have framed this inquiry as whether the right in question is "infringed by the mere act of reproduction, performance, distribution or display." 1 Nimmer on Copyright § 1.01[B], at 1–13. Section 301 preempts only those state law rights that " 'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir.1992) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). If an extra element is "required, instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright' and there is no preemption." 1 Nimmer on Copyright § 1.01[B], at 1–14–15 (footnotes omitted); *see also Harper & Row*, 723 F.2d at 200 (where state law right is predicated upon an act incorporating elements beyond mere reproduction or the like, the [federal and state rights] are not equivalent and there is no preemption).

We conclude that the alleged contractual restriction on National's use of the licensed programs constitutes an extra element in addition to the copyright rights making this cause of action qualitatively different from an action for copyright.

National initially contends that any complaint alleging use of a copyrighted work that exceeds the uses allowable under the license must be brought as a copyright infringement claim; contract claims containing such allegations are preempted. In support of this proposition, National cites several cases finding copyright infringement when the licensee's "use" of a copyrighted and licensed work exceeded the uses allowed under the license. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir.1989); *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 853 (9th Cir. 1988); *Gilliam v. American Broadcasting Cos., Inc.*, 538 F.2d 14, 20 (2d Cir.1976); *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985); *Wolff v. Institute of Elec. & Elecs. Eng'rs, Inc.*, 768 F.Supp. 66, 69 (S.D.N.Y. 1991); *National Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 544 (W.D.Tex.1980).

We believe that National reads these cases too broadly. First, only one of these cases involved preemption. *See Wolff*, 768 F.Supp. at 69. In *Wolff*, the plaintiff alleged that the defendant had both infringed his copyright and breached their contract by republishing a photograph licensed for only one publication. The court held that the breach of contract cause of action was preempted because, as the court construed it, the plaintiff merely alleged that the defendant breached their contract by infringing his copyright. *Wolff*, 768 F.Supp. at 69. None of the other cases involved preemption; however, in each, the conduct claimed as infringing involved one of the exclusive copyright rights. *See S.O.S.*, 886 F.2d at 1087 (licensee made a *copy* of the program and prepared a modified version without authorization); *Cohen*, 845 F.2d at 852 (company with a right to record musical composition for film and display film on television *also sold and rented* videocassettes to general public); *Gilliam*, 538 F.2d at 18 (defendant *televised edited version* of program without authorization); *Frank Music*, 772 F.2d at 512 (defendant staged musical revue in manner not allowed under the license); *Shaklee*, 503 F.Supp. at 544 (defendant in-

serted unauthorized advertising material into published work). Rather than stating a rule that any use exceeding the license is infringing, these cases establish that engaging in one of the acts reserved to the copyright holder under § 106, without a license to do so, is infringing. Moreover, the *Wolff* case stands at most for the proposition that a breach of contract claim alleging nothing more than an act of infringement is preempted. Given that we cannot read CA to allege that National engaged in one of the acts reserved to CA under § 106, these cases are inapposite.

Because we find no general rule holding breach of contract actions such as this one preempted, we examine specifically whether this cause of action seeks to protect rights equivalent to the exclusive copyright rights. We conclude that the contractual restriction on use of the programs constitutes an additional element making this cause of action not equivalent to a copyright action.

National disagrees with this characterization and attempts to read the term "use" in the license agreement as synonymous with the rights given to the copyright holder. We believe it is not, as two recent cases make clear.

In a case very similar to this one, involving CA, the court held that a contractual restriction on use of a computer program was distinct from the exclusive copyright rights. In *Computer Assocs. v. State St. Bank & Trust*, 789 F.Supp. 470 (D.Mass. 1992), the parties had executed a license that provided, *inter alia:* "Customer agrees to refrain from using the Equipment ... for other customer-sites or customers on a service basis." *Id.* at 475. CA argued that State Street violated the provisions of the license agreement by allowing customers direct access to the programs to gain information. Because of that alleged breach, Computer Associates claimed that it could cancel their maintenance contract.

State Street moved for a preliminary injunction prohibiting CA from cancelling the maintenance contract. CA then claimed that the violation of the agreements constituted copyright infringement, preventing State Street from claiming irreparable harm. In denying this claim, the court stated:

> infringement results only from the unauthorized copying of copyrighted material. A use of an authorized copy of copyrighted subject matter ordinarily is not infringing.... Therefore, applicable limitations on State Street's use of the programs, if any, must be derived initially from the license agreements, not copyright law.

*Id.* at 472.

The Ninth Circuit reached a similar conclusion in *G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.*, 958 F.2d 896 (9th Cir.1992). In *Kalitta*, the plaintiff had received from the FAA a certificate (STC) allowing him to modify a plane design.[3] The defendant took the certificate from an existing, modified plane and used it to modify another plane, without paying the plaintiff for doing so. Plaintiff sued for unfair competition, and the defendant raised the defense of copyright preemption. The court first noted that there was no allegation of copying. It went on to hold that:

> Federal copyright law governs only copying.... Enforcement of Rasmussen's property right in his STC leaves Kalitta free to make as many copies of the certificate as it wishes; to the extent the manual supplement is not protected by the copyright laws, the same is true of it. That Kalitta is prevented from then using these copies to obtain an airworthiness certificate from the FAA does not interfere in any way with the operation of the copyright laws.

*Id.* at 904.

In both of these cases, the courts distinguished restrictions on use of a copyrighta-

---

**3.** The FCC requires that all planes be of approved design. As a shortcut to examining every plane, the FCC approves a design for a class of planes. This requires significant testing. The FCC also approves modifications to existing approved design by issuing a certificate demon-strating that the modification is safe. Then, for any particular modified plane, a company can prove conformance by demonstrating that they have such a certificate and the design conforms to it.

ble work that did not involve "copying" from the exclusive rights in copyright. CA's situation is the same. CA does not claim that National is doing something that the copyright laws reserve exclusively to the copyright holder, or that the use restriction is breached "by the mere act of reproduction, performance, distribution or display." Instead, on this posture, CA must be read to claim that National's or EDS's processing of data for third parties is the prohibited act. None of the exclusive copyright rights grant CA that right of their own force. Absent the parties' agreement, this restriction would not exist. Thus, CA is alleging that the contract creates a right not existing under the copyright law, a right based upon National's promise, and that it is suing to protect that contractual right. The contractual restriction on use of the programs constitutes an extra element that makes this cause of action qualitatively different from one for copyright.

We believe that the legislative history of the Copyright Act supports this conclusion. In elaborating the meaning of the term "equivalent rights" the House committee report to the Copyright Act suggests that breaches of contract were not generally preempted: "nothing in the bill derogates from the rights of parties to contract with each other and to sue for breaches of contract." *See* H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 132, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748. This is not the end of the inquiry, however.

National contends that while the bill as initially drafted might have excluded breaches of contract from preemption, the bill as passed did not. National notes that § 301(b)(3)[4] of the Copyright Act, as initially drafted and reported out of committee in the House, explicitly exempted breach of contract suits from preemption. This provision was then amended on the floor of the House to delete all the specific examples of non-preempted causes of action. National claims this action demonstrated congressional intent to remove the "safe harbor" from preemption for breach of contract actions. *See, e.g., Wolff v. Institute of Elec. & Elecs. Eng'rs, Inc.,* 768 F.Supp. 66 (S.D.N.Y.1991) (deletion of safe harbor provision for breaches of contracts suggests that Congress did not intend generally to except them from preemption).

We disagree. Although the deletion of a provision from a final bill generally means that Congress intends to disavow what was formerly expressed, we believe in this case the facts surrounding the deletion of § 301(b)(3) suggest Congress did not intend to reverse the presumption of non-preemption for the examples initially included in § 301(b)(3). Instead, it appears that certain members of the House were concerned about the subsequent addition of the tort of misappropriation to the list of non-preempted causes of action, and suggested deletion of the specific examples in order to prevent confusion about the scope of preemption.[5] We agree with Professor Nim-

---

**4.** Section 301(b)(3) initially provided that:

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

\* \* \* \* \* \*

(3) activities violating rights which are not equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106, including breaches of contract, breaches of trust, invasion of privacy, defamation, and deceptive trade practices such as passing off and false representation. Sec. 301(b)(3), H.R. 4347, 89th Cong., 2d Sess. (1966).

**5.** The version of the proposed Copyright Act sent to the House floor contained several additional items listed as immune from preemption. One of these created great controversy: "misappropriation not equivalent to any of such exclu-

sive rights." The Department of Justice objected to this exemption, stating that "[it] is almost certain to nullify preemption." Letter to Hon. Robert Kastenmeier, July 27, 1976, *cited in* 1 Nimmer on Copyright § 1.01[B], at 1–22. The bill was then amended on the House floor to delete all the specific examples of non-preempted causes of action. Rep. Seiberling described the reasons for that action as follows:

Mr. Chairman, I offer an amendment [deleting all of the latter part of Section 301(b)(3) beginning with the word 'including,' followed by the examples of nonpreempted state created rights]. Mr. Chairman, my amendment is intended to save the 'Federal preemption' of State law section which is section 301 of the bill, from being inadvertently nullified because of the inclusion of certain examples in the exemptions from preemption. The

mer that "[i]t seems clear that the amendment that caused such deletion was not intended substantively to alter Section 301(b)(3) as regards [those examples originally included]." 1 Nimmer on Copyright § 1.10[B], at 1–22; *See also Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1533 (S.D.N.Y.1985) (same); *Factors, Etc., Inc. v. Pro Arts, Inc.*, 496 F.Supp. 1090 (S.D.N.Y.1980) (same). Thus, we believe, the better view is that the legislative history suggests a congressional intent not to preempt breach of contract actions such as this one.[6]

National contends, however, that such a conclusion fails to recognize the nature and value of computer software. According to National, computer software has value because it performs a function. National thus claims an allegation that it used the program for another is in fact an allegation that it distributed the "functionality" of the program. This argument fails. First, National cites to no authority in support of this position. Second, even with respect to computer software, the distribution right is only the right to distribute *copies* of the work. As Professor Nimmer has stated, "[i]nfringement of [the distribution right] requires an actual dissemination of either copies or phonorecords." 2 Nimmer on Copyright § 8.11[A], at 8–124.1. Finally, courts have specifically held that copyright protection in computer software does not extend to the software's function. *See, e.g., Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 704 (2d Cir.1992). Thus, even if CA could be said to have alleged that National "distributed the functionality" of its program, such a claim would not protect a right equivalent to one of the exclusive rights in copyright.

Finally, National claims that CA's requested relief demonstrates its cause of action is equivalent to the exclusive rights under copyright. First, National notes that CA requested damages for unjust enrichment, damages National claims are preempted under § 301. National is correct in noting that certain courts have held claims for unjust enrichment preempted when based upon allegations that the de-

amendment would simply strike the examples listed in section 301(b)(3). The amendment is strongly supported by the Justice Department, which believes that it would be a serious mistake to cite as an exemption from preemption the doctrine of 'misappropriation.' The doctrine was created by the Supreme Court in 1922 and it generally has been ignored by the Supreme Court and the lower courts ever since. Inclusion of a reference to the misappropriation doctrine in this bill, however, could easily be construed by the courts as authorizing the States to pass misappropriation laws. We should not approve such enabling legislation, because a misappropriation law could be so broad as to render the preemption section meaningless.

122 *Cong.Rec.* H10910 (daily ed. Sept. 22, 1976).

We agree that these remarks suggest that Congress did not intend to remove the exemption from preemption for those causes of action initially listed in § 301(b)(3). Rep. Seiberling stated that his concern was over "certain examples," and then went on to note that his main concern was the misappropriation example, which was added after the bill was initially drafted. We thus read his amendment striking the examples merely to remove the specific reference to misappropriation.

**6.** We note that Nimmer has argued that the *Wolff* court was wrong to find preemption even though the act claimed to breach the contract

involved one of the exclusive copyright rights. "Reverting to *Wolff*, the court could have required the plaintiff to adopt an election of remedies to the extent that the copyright and contract causes of action were deemed inconsistent. *See* § 10.15[A] *infra*. Alternatively, it could have determined that any damage for contract breach was already subsumed in the copyright recovery. *See* § 14.02[B] & n. 53.1 *infra*. Both those devices might have accomplished the same goal without reaching an erroneous preemption holding." 1 Nimmer on Copyright § 1.01[B], at 1–16.1. According to Nimmer, then, if a license agreement contains a provision prohibiting the licensee from copying the program, the licensor could sue for breach of contract rather than for copyright infringement. Other courts have concluded, however, that breach of contract actions in which the alleged breach consists of the exercise of one of the exclusive copyright rights are preempted. *See Wolff*, 768 F.Supp. at 69; *Howard v. Sterchi*, 725 F.Supp. 1572, 1579 (N.D.Ga.1989); *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 645 F.Supp. 1201, 1205 (S.D.N.Y.1986) (a breach of contract claim for "unauthorized use of copyrightable material falls squarely within § 301 and is thus preempted"). Because we decide that the specific contract right CA seeks to enforce is not equivalent to any of the copyright rights, we do not need to decide whether a breach of contract claim based on a wrongful exercise of one of the exclusive copyright rights is preempted.

fendant engaged in one of the acts reserved to the copyright holder under § 106. We do not read CA to allege that National was unjustly enriched as a result of a wrongful exercise of one of the § 106 rights. Rather, we read this allegation of damage as a further explanation of the damages CA intends to prove arising from the breach of contract. CA alleges generally that it has been damaged in an amount to be proved at trial, and it will have to prove those damages. In this context, we read its allegations of unjust enrichment as an attempt, albeit inartful, to allege that National received from Lend Lease and Tilden amounts that CA would have received had National not breached their contract. Second, National notes that CA requested return or destruction of any copies of its programs still in National's possession. It notes that the Copyright Act provides precisely that remedy, *see* 17 U.S.C. § 504, and claims that the request for destruction shows the claim is equivalent to a copyright claim. We disagree. The parties' contract specifically provides for the return or destruction of the licensed programs upon any breach of the license agreement.[7] This remedy would apply equally to this asserted breach (improper use) as to an action for breach of an agreement to pay royalties or license fees, which National admits would not be preempted. Furthermore, the copyright remedy of return or destruction applies even absent a preexisting relationship between the parties: it does not have to be stated in a contract or license agreement. We cannot conclude that this action is preempted simply because the parties' contract provides a remedy for breach identical to a remedy provided in copyright.

### III. CONCLUSION

For all the foregoing reasons, we conclude that CA's cause of action, as pled, is not preempted by the Copyright Act. Therefore, we reverse the order of the district court dismissing CA's first counterclaim with prejudice and remand for further proceedings consistent with this opinion.

---

[7] The license agreement between CA and National provides that CA can terminate the license agreement immediately upon National's breach of any term of the agreement. J.A. at 27.

The license agreement between CA and National provides:

If this Agreement should terminate for any reason, Licensee [National] shall certify in writing to CA that all copies or partial copies of the Licensed Program have been either returned to CA or otherwise destroyed and deleted from any computer libraries or storage devices and are no longer in use by Licensee.

J.A. at 26.