# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3428

_____

John Frederick Dryer, Elvin Lamont Bethea, and Edward Alvin White

*Plaintiffs - Appellants*

v.

The National Football League

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 22, 2015
Filed: February 26, 2016

_____

Before WOLLMAN, BYE, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Appellants John Frederick Dryer, Elvin Lamont Bethea, and Edward Alvin White played professional football in the National Football League ("NFL"). They participated in a putative class-action lawsuit in which twenty-three former NFL players sued the NFL on behalf of themselves and similarly situated former players. This suit claimed that films produced by NFL-affiliate NFL Films violated the players' rights under the right-of-publicity laws of various states as well as their rights under the Lanham Act, 15 U.S.C. § 1125. Twenty of those players settled their dispute with the NFL, but the appellants elected to opt out of that settlement and

pursue their individual right-of-publicity and Lanham Act claims. The district court[1] granted the NFL's motion for summary judgment on these claims. We affirm.

I.

NFL Films creates theme-based audio-visual productions ("films") describing significant games, seasons, and players in the NFL's history. The films consist of compilations of game footage and interviews with players, coaches, and other individuals involved in the game. Since 1965, NFL Films has produced hundreds of these films, and many have won awards for the creative elements they employ. The NFL sells copies of the films to individual consumers, and it licenses the right to display the films to distributors such as Warner Home Video, Hulu, and ESPN. The league also broadcasts some of the films on its television network and website.

Appellants Dryer, Bethea, and White played in the NFL during the 1960s, 1970s, and 1980s. All three players appear in game footage featured in a number of the films, and all three gave interviews after they retired for use in the films.

The appellants joined twenty other former NFL players in a putative class-action lawsuit against the NFL. The suit alleged that the NFL's use of footage of games in which these players participated violates the common law and statutory rights of publicity of various states. The players brought claims for injunctive relief and damages under these laws as well as a claim for unjust enrichment. The players further claimed that the NFL's use of images depicting them playing football violates the Lanham Act, 15 U.S.C. § 1125.

---

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Most of the original plaintiffs resolved their dispute with the NFL in a settlement through which the NFL established both a fund for the benefit of all former professional players and a licensing agency to assist those players in exploiting their publicity rights. The appellants opted out of that settlement, and the only issues involved in this appeal are their individual right-of-publicity and Lanham Act claims against the NFL's use of their images in the films. The appellants do not challenge the NFL's use of the interviews they each gave to NFL Films.

The district court granted summary judgment to the NFL on the appellants' right-of-publicity claims. The court found that the Copyright Act, 17 U.S.C. § 301(a), preempted those claims because the claims challenged a work in which the NFL held a valid copyright and asserted rights identical to those protected by copyright law. The court further found that because the films are expressive, non-commercial speech, the appellants' right-of-publicity claims must yield to the First Amendment. In addition, the court found that the films fell under newsworthiness or public interest safe harbors included in each of the relevant state laws. Finally, the court found that the appellants' implied consent to the creation and publication of the films, as well as the doctrine of laches, provided independent bases for its judgment in favor of the NFL. With respect to the appellants' claim under the Lanham Act, the court granted the NFL summary judgment because the court found that Lanham Act claims apply only to commercial speech, and in any event the films did not pose a risk of confusing consumers as to the appellants' affiliation with or endorsement of the NFL. The appellants appeal all of these rulings.

II.

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment must view the evidence and inferences that may be reasonably drawn from

the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

A.

The appellants argue first that the district court erred by finding that the Copyright Act preempts their right-of-publicity claims. Section 301(a) of the Copyright Act provides that federal copyright law preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright." 17 U.S.C. § 301(a). In determining whether federal copyright law preempts a cause of action under state law, this court asks (1) whether "the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act" and (2) whether "the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106." *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993). If a plaintiff's state-law claim meets both of these criteria, copyright law will preempt that claim as a matter of law. *Id.*

With respect to the first requirement, the Copyright Act defines the subject matter of copyright as "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). The appellants argue that their performances in football games during their NFL careers constitute part of their identities rather than "fixed" works eligible for copyright protection.

This argument lacks merit. Although courts have recognized that the initial performance of a game is an "athletic event" outside the subject matter of copyright, *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 846 (2d Cir. 1997), the Copyright Act specifically includes within its purview fixed recordings of such live performances, 17 U.S.C. § 101. Indeed, the same decision that the appellants cite to support excluding live sporting events from copyright law recognized that "[t]he Copyright Act was amended in 1976 specifically to insure that simultaneously-recorded transmissions of live performances and sporting events would meet the Act's requirement that the original work of authorship be 'fixed in any tangible medium of expression.'" *Nat'l Basketball Ass'n*, 105 F.3d at 847 (quoting 17 U.S.C. § 102(a)). The appellants do not argue that NFL Films lacked permission to record appellants' live performances in NFL games. Nor do they dispute that the NFL maintains an enforceable copyright in the footage that NFL Films gathered during those games. Because the appellants do not challenge the NFL's use of their likenesses or identities in any context other than the publication of that game footage, we hold that the appellants' right-of-publicity claims challenge a "work . . . within the subject matter of copyright." *See Nat'l Car Rental*, 991 F.2d at 428.

Regarding the second requirement, the Supreme Court has recognized that the purpose of copyright protection is to "suppl[y] the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985). Copyright law achieves this objective "[b]y establishing a marketable right to the use of one's expression." *Id.* The primary rationales underlying the right of publicity, meanwhile, are "the desire to provide incentives to encourage a person's productive activities and to protect consumers from misleading advertising." *C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 824 (8th Cir. 2007). Due to the state's interest in protecting consumers, a right-of-publicity suit challenging the use of a copyrighted work in a commercial advertisement could have purposes unrelated to the aims of copyright law. *See, e.g.,*

-5-

*Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1029 (3d Cir. 2008) (finding no preemption where a copyrighted voice recording was used in an advertisement for an unrelated product). When a right-of-publicity suit challenges the expressive, non-commercial use of a copyrighted work, however, that suit seeks to subordinate the copyright holder's right to exploit the value of that work to the plaintiff's interest in controlling the work's dissemination. *See, e.g., id.* at 1029 ("[L]imiting the way that material can be used in expressive works extends beyond the purview of state law and into the domain of copyright law."); J. Thomas McCarthy, The Rights of Publicity and Privacy § 11.55 (2d ed. 2013) ("If [a] performer [in a copyrighted recording] later objects to the reproduction or performance of that recording in an expressive, non-advertising use, then the claim is one of copyright infringement, not of infringement of the right of publicity."). Such a suit asserts rights equivalent to "exclusive rights within the general scope of copyright" and is preempted by copyright law. *See Nat'l Car Rental*, 991 F.2d at 428.

The appellants argue that their claims lie outside the scope of copyright law because the films represent commercial speech that states have a legitimate interest in regulating. In *Porous Media Corp. v. Pall Corp.*, we recognized three factors that govern whether speech is commercial rather than expressive: "(i) whether the communication is an advertisement, (ii) whether it refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech." 173 F.3d 1109, 1120 (8th Cir. 1999). According to the appellants, the films qualify as commercial speech under this test because the films represent advertisements for "NFL-branded football," a specific product that the films promote for the NFL's economic benefit.

Applying the three *Porous* factors, we agree with the district court's conclusion that the films are expressive, rather than commercial, speech and that the Copyright Act therefore preempts the appellants' claims. First, the films are not advertisements because they do not "propose[] a commercial transaction." *See id.* (quoting

*Cincinnati v. Discovery Network*, 507 U.S. 410, 423 (1993)). As the district court observed, at no point do the films encourage consumers to purchase any product or service. Second, although the films "refer[] to" the NFL, they do not reference the league as "a specific product." *See Porous*, 173 F.3d at 1120. The films tell stories of past contests featuring NFL teams and players, and they reference the league as part of those historical events rather than as a present-day product. Moreover, consumer demand for the films demonstrates that they exist as "products" in their own right. As the district court recognized, the NFL does not pay media outlets to show the films to potential NFL customers. To the contrary, consumers pay to view the films, either by purchasing copies or through subscriptions to broadcasters like ESPN, which licenses the films to show on its various television networks. Because the films represent speech of independent value and public interest rather than advertisements for a specific product, the NFL's economic motivations alone cannot convert these productions into commercial speech. *Cf. Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952) (rejecting the argument that "motion pictures" fall outside "the First Amendment's aegis because their production, distribution, and exhibition is a large-scale business conducted for private profit"). As a result, the films are expressive speech under the *Porous* framework. *See* 173 F.3d at 1120. The Copyright Act therefore preempts the appellants' attempt to control dissemination of the films and thereby exercise a right equivalent to "exclusive rights" granted by copyright. *See Nat'l Car Rental*, 991 F.2d at 428.

Because we hold that the Copyright Act preempts the appellants' right-of-publicity claims, we do not reach the district court's alternative rationales for granting summary judgment to the NFL.

B.

The appellants also argue that the district court erred in granting the NFL summary judgment on their claim of false endorsement under section 43(a)(1)(A) of

the Lanham Act, 15 U.S.C. § 1125. This provision "prohibits 'false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device.'" *Am. Ass'n of Orthodontists v. Yellow Book USA, Inc.*, 434 F.3d 1100, 1103 (8th Cir. 2006) (quoting *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992)). To overcome summary judgment on a claim under this provision, a plaintiff must provide evidence that the challenged statements are either "literally false as a factual matter" or "literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or [are] likely to deceive consumers." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998). Evidence that some consumers "misunderstood" a statement, however, is insufficient to overcome summary judgment where the statement is not objectively "misleading [or] false." *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393-94 (8th Cir. 2004) (holding that survey results showing that half of consumers misinterpreted a statement failed to give rise to a genuine issue of material fact where the plain meaning of the statement was not objectively misleading).

The appellants argue that a genuine issue of material fact remains regarding whether the films falsely represent that the appellants currently endorse or associate themselves with the NFL. In support of this argument, the appellants point to survey evidence showing that a statistically significant number of survey participants concluded upon viewing the films that the depicted players endorsed the NFL.

The appellants, however, have failed to present any evidence that the films include "misleading [or] false statements" regarding the appellants' current relationship with the NFL. *See id*. First, the appellants do not claim that any statements in the films are "literally false as a factual matter." *See United Indus.*, 140 F.3d at 1180. Second, the appellants provide no evidence that the films "implicitly convey a false impression, are misleading in context, or [are] likely to deceive consumers." *See id.* The appellants do not contend that the objected-to footage

depicts anything other than their actual performances in past NFL games. Nor do the appellants identify any statements in the films' audio commentary that might mislead viewers as to their relationship with or feelings toward the league. Although the films as a whole may portray the NFL in a positive light, nothing in the films implies that the appellants share that perspective. To the contrary, the appellants had the opportunity to share their own views when they willingly participated in interviews with the films' creators, and they do not challenge the NFL's inclusion of those interviews in the films. Some viewers of this content may have "misunderstood" the extent to which the appellants continue to associate with or endorse the league, but this misunderstanding alone is insufficient to overcome summary judgment. *See Am. Italian Pasta*, 371 F.3d at 394. Because the appellants provide no evidence that the films contain "misleading [or] false statements" regarding their current endorsement of the NFL, their claim of false endorsement under the Lanham Act fails as a matter of law. *See id*. Accordingly, we do not reach the district court's alternative rationales for granting summary judgment to the NFL.

## III.

For the reasons set forth above, we affirm the district court's grant of summary judgment to the NFL on the appellants' right-of-publicity and Lanham Act claims.

_____