CSM INVESTORS, INC. and James M. Cooperman and Associates Architects, Inc., Plaintiffs,

v.

EVEREST DEVELOPMENT, LTD., Defendant and Third–Party Plaintiff,

v.

James M. COOPERMAN, Third–Party Defendant.

Civ. No. 4–92–785.

United States District Court, D. Minnesota, Fourth Division.

Jan. 11, 1994.

Robert J. Tansey, Jr., Rita Coyle De-Meules, Richard H. Kyle, Jr., and Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, Alan Marshall Anderson, Larkin Hoffman Daly & Lindgren, Bloomington, MN, for CSM Investors, Inc., James M. Cooperman and Associates Architects, Inc. and James M. Cooperman.

Timothy A. Sullivan, George Orlyn Ludcke, Caryn S. Glover, and Best & Flanagan, Minneapolis, MN, for Everest Development, Ltd.

## ORDER

DOTY, District Judge.

This matter is before the court on cross-motions for summary judgment. Defendant and third-party plaintiff Everest Development, Ltd. ("Everest") seeks partial summary judgment on Count I of the counterclaim and third-party complaint which alleges copyright infringement. Plaintiffs CSM Investors, Inc. and James M. Cooperman and Associates Architects, Inc. and third-party defendant James M. Cooperman (collectively referred to as "plaintiffs") seek summary judgment on their declaratory judgment claim and all claims asserted by Everest in the counterclaim and third-party complaint. Based on a review of the file, record and proceedings herein, and for the reasons stated below, the court grants Everest's motion and grants in part and denies in part the motions of plaintiffs.

## BACKGROUND

CSM Investors, Inc. ("CSM") and Everest Development Ltd. are Minnesota corporations which own and develop real estate. James M. Cooperman ("Cooperman") is an architect and owner and president of James

M. Cooperman and Associates Architects, Inc. In early 1991, the City of Roseville ("the City") was willing to furnish a piece of property located at the southeast corner of Long Lake Road and County Road C in Roseville, Minnesota to a local developer willing to build an office showroom. It was a narrow site of approximately five acres and 215,000 square feet.

Everest hired Brian Johnson ("Johnson") of the Dovolis, Johnson and Ruggieri architectural firm and the Putnam Consultants, P.A. ("Putnam") engineering firm to prepare original drawings for an office showroom warehouse building for the site. Both Johnson and Putnam expended substantial time and resources to create architectural and engineering plans and designs for a building that maximized the usable space and was aesthetically pleasing. The plans were completed in April and May of 1991 and transferred to Everest for $6,000.

On July 17, 1991, Everest and the City entered into a detailed Development Agreement for the site. The agreement required construction of an office showroom with an aggregate floor space of at least 43,000 square feet. The agreement also contained several design standards. Everest submitted architectural and engineering plans and related materials to the City and the local Watershed District to obtain the necessary zoning approvals. The project required a special use permit because an office showroom warehouse was not a permitted use under the zoning code. The City was concerned about the visibility of roof top mechanical units and Everest prepared special drawings showing parapet screening of the units. After negotiating with city officials and the Watershed District and responding to their concerns, Everest obtained a special use permit for an office showroom warehouse.

Everest later elected not to develop the property because of potential hazardous waste problems and ceased development of the building prior to construction. Everest and the City agreed to terminate their development agreement on March 20, 1992. Everest's plans for the project remained on file with the City of Roseville and were available for inspection by the public.

A real estate broker for the site contacted CSM concerning the project in the spring of 1992. CSM was interested in pursuing the project because of the financing offered by the City. When CSM met with city officials to discuss the project, the city officials said they wanted an office showroom constructed on the site in return for tax increment financing. The City provided CSM with a copy of the plans submitted by Everest and told CSM to keep development of the site as identical to the Everest project as possible.

CSM contacted Johnson and Putnam in March 1992 to purchase the right to use the Everest plans. CSM was informed that Everest owned all the rights to the plans. CSM then approached Everest to inquire about purchasing the plans. Everest told CSM that it could not use the plans without Everest's consent. Everest indicated that the plans would be made available if CSM paid appropriate compensation.[1] CSM rejected Everest's asking price and on April 6, 1992, retained James M. Cooperman and his architectural firm to design a building for the site. CSM gave Cooperman a copy of the Everest plans. Cooperman claims that the Everest plans were used for reference purposes only and were not examined in great detail.

On April 8, 1992, two days after being retained by CSM, Cooperman's firm completed a preliminary site plan for an office showroom building. The draftsman stated that a two-day turn around was very fast and was the shortest time period he knew of for producing a site plan. The draftsman claims he only reviewed the Everest drawings for a few minutes. The proposed building complied with the City's setback requirements although neither the draftsman or the architect hired by Cooperman had reviewed the re-

1. Plaintiffs claim that Everest demanded $60,000 for the plans. Everest contends that it only asked for $38,700 for the plans. Everest also states that it was willing to sell the plans to CSM for $30,400 if its affiliate company was hired to provide construction services for the project.

quirements.[2] CSM also produced a section drawing dated April 29, 1992, which was nearly identical to an Everest section drawing dated May 10, 1991. The project designation, building, trees, cars, lettering and numbering in CSM's section drawing mirror the Everest drawing. The draftsman cannot recall where he got the information to prepare the section drawing.

On April 29, 1992, CSM and Cooperman met with city officials to discuss development of the site. City officials noted that the site plan and building proposed by CSM were almost identical to the building designed by Everest and approved by the City.[3] The City disliked CSM's proposal that the rear of the building be concrete. City officials said they preferred Everest's plan which called for a band of brick to extend from the front of the building to the rear of the building. The City told CSM to redesign its building and submit revised drawings.

On May 13, 1992, CSM wrote to the Watershed District to obtain watershed and drainage approval for the site. CSM stated that it had purchased the property from Everest and intended to build a business office center similar to the project proposed by Everest.[4] CSM submitted a proposed grading site plan which was prepared by an engineering firm that had been given copies of Everest's Grading, Drainage and Utilities Plan. CSM provided the drawings to the Watershed District to obtain zoning approvals and certain permits necessary to enable it to construct the proposed building. CSM informed the Watershed District that:

> CSM Corporation's project is comparable to the Everest Group's regarding building configuration, parking, drive areas and site entrances with a slight difference in building foot print and an increase in the floor elevation height by 2 feet. The grade elevation [sic] have changed slightly on the North side, otherwise all grade elevations, berms, retaining walls, ponding area,

storm sewer, sanitary sewer, water system and hydrants will remain identical to the Everest Group's submission.

CSM successfully obtained a special use permit and zoning approval from the Watershed District and the City.

In mid–June 1992, CSM submitted its first set of detailed architectural and engineering plans to the City. The CSM plans were virtually identical to the Everest plans. CSM applied for and received building permits and began construction based on the first set of plans. CSM also used the first set of plans to lease space to a large tenant. Everest believed that CSM's architectural and engineering plans and drawings unlawfully infringed the Everest plans and drawings. Everest applied to the United States Copyright Office for copyright registration of its plans and the building design. The copyrights were issued on an expedited basis.

On July 23, 1992, CSM and the City entered into a development agreement that was almost identical to the City's agreement with Everest. On July 28, 1992, Everest demanded that CSM cease and desist from infringing the Everest copyrights. Everest informed CSM that it would protect its copyrights in court if necessary. CSM denied all allegations of infringement. To avoid litigation, CSM requested that Cooperman revise the plans to address Everest's concerns. The modifications included changes to the entrance configuration off Long Lake Road, parking and utility layouts, and elevation and grading design. The revised plans were submitted to the City on August 19, 1992, and approved within a week. CSM completed the building, leased it and has won several awards for the project.

Plaintiffs brought suit seeking a declaratory judgment that the CSM architectural and engineering plans did not infringe Everest's plans. Everest counterclaimed against CSM and initiated a third-party action against Cooperman claiming copyright infringement

---

**2.** City ordinances require 15′ parking lot setback off County Road C and 5′ parking lot setback off the east property line.

**3.** Notes of the April 29, 1992, meeting taken by city officials state that "[t]he site plan and building proposed by CSM are almost identical in

every respect to the design that the City approved for Everest."

**4.** Contrary to its representation, CSM did not purchase the property from Everest.

under the Copyright Act of 1976, unfair competition under the Lanham Act, violation of the Minnesota Deceptive Trade Practices Act and unfair competition and unjust enrichment under state law. Everest seeks summary judgment on its copyright infringement claim. Plaintiffs move for summary judgment on their declaratory judgment claim and the various claims asserted by Everest.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial court to direct a verdict if there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510–11.

On a motion for summary judgment, the court views the evidence in favor of the non-moving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, a verdict should not be directed. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element ren-

ders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

### 1. Copyright Infringement

Copyright protection automatically arises from the moment a work is created. *Chuck Blore & Don Richman, Inc. v. 20/20 Advertising, Inc.*, 674 F.Supp. 671, 673 n. 1 (D.Minn.1987). In order to establish a claim of copyright infringement, Everest must prove ownership of a valid copyright and copying, or infringement, of protected portions of its copyrighted work by the plaintiffs. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987). Architectural plans and drawings are protected by copyright law as "pictorial, graphic, and sculptural works" and "architectural works." 17 U.S.C. § 102(a)(5) & (8). An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. *Id.* § 101. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features. *Id.*

### A. Validity of Copyrights

To receive copyright protection, Everest's architectural plans and drawings must be original. Plaintiffs challenge Everest's copyrights, contending that the Everest plans and building design are not sufficiently original to be copyrightable. The burden is on plaintiffs to prove that the copyrights are invalid.

Everest was issued certificates of copyright registration for its architectural and engineering plans and for the building design. *See* Certificate Registration No. VAu232–372 (plans) and VAu232–371 (building design). The certificates are prima facie evidence of the validity of the copyrights. *E.F. Johnson Co. v. Uniden Corp. of America*, 623 F.Supp. 1485, 1492 (D.Minn.1985). Even when valid certificates exist, however, architectural works must exhibit some creativity before they are eligible for copyright protection. The test for originality is a low threshold. The United States Supreme Court has stated that:

Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be.

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991) (quoting 1 M. Nimmer & D. Nimmer, *Copyright* § 1.08[C][1] (1990)).

Plaintiffs contend that Everest's plans lack originality because the design of the project was dictated by geographic and legal constraints imposed on development of the site. The court disagrees. The court notes that the site requirements and city ordinances limited certain aspects of the project designed by Everest. The site is not of such a unique nature, however, that architectural plans detailing a one-story office showroom must be substantially similar. Rather, the adaptations to the site in the Everest plans reflect Everest's creativity and thus are copyrightable. *See, e.g., East/West Venture v. Wurmfeld Assoc., P.C.*, 722 F.Supp. 1064, 1068 n. 3 (S.D.N.Y.1989). In addition, Everest's plans contain original features not demanded by the uniqueness of the site.

Plaintiffs also claim that Everest's plans lack originality because many features of the office showroom project were required by the Development Agreement. The design standards embodied in the agreement do not preclude copyright protection in this case. The court finds that the accommodation of the contractual standards in the Everest plans is also a product of Everest's creativity. The court also notes that the development agreement was not formulated until after Everest submitted plans of its proposed project to the City. The fact that the City entered into a virtually identical agreement with CSM and told CSM to keep development of the site as identical to the Everest project as possible neither strips Everest of its copyright protection nor serves as a license for infringement.

Plaintiffs next argue that Everest's copyrights are invalid because there is nothing original about the structural elements included in the Everest project. It is undisputed that copyright protection does not extend to individual standard features. It is also axiomatic that copyright protection covers only the expression of ideas fixed in a tangible form and not the ideas themselves. *E.F. Johnson*, 623 F.Supp. at 1500. Thus, the use of standard structural elements and the concept of a one-story office showroom are not copyrightable. But, as the Eighth Circuit recognized, "[w]hile the concept of a T-shaped building is not entitled to copyright protection, detailed plans and drawings of a specific building are." *Nucor Corp. v. Tennessee Forging Steel Service, Inc.*, 476 F.2d 386, 390 (8th Cir.1973).

The court concludes that the combination and arrangement of elements and the particular building design embodied in Everest's plans and drawings are sufficiently original to be afforded copyright protection. While Everest cannot prevent anyone from innocently building a similar office showroom, it can prevent others from deliberately copying the originality of its plans.

■ Finally, plaintiffs insist that even if the Everest plans meet the originality requirement, they do not qualify for copyright protection because they embody an unprotectable idea. Relying on *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458 (5th Cir.1990), plaintiffs contend that the Everest plans are not copyrightable because the expression of Everest's ideas cannot be separated from the ideas themselves. In *Kern River*, the Fifth Circuit concluded that maps depicting the route of a pipeline were not copyrightable because they expressed in the only effective way the idea of the location of the pipeline. *Kern River*, 899 F.2d at 1464.

The court finds that the reasoning in *Kern River* does not govern this case. The idea of an office showroom is separate from the expression of that idea in the Everest plans. The Everest plans contain detailed specifica-

tions for the construction of the proposed office showroom. The expression of the building design is clearly separate from the idea of where to construct the building. The Everest plans may be the only way to convey the idea of the particular building designed by Everest. The plans, however, do not depict the only effective representation of the idea of an office showroom on the Roseville site. Thus, extending copyright protection to the plans does not confer upon Everest a monopoly of the idea of an office showroom.[5]

## B. Infringement

Everest can prove plaintiffs copied, or infringed, protected portions of its copyrighted work either by direct or circumstantial evidence. *Hartman*, 833 F.2d at 120. Proving infringement by circumstantial evidence turns on whether plaintiffs had access to the Everest plans and whether the two works are substantially similar in both ideas and expression. *Hartman*, 833 F.2d at 120. Access is not disputed in this case. Similarity is determined by a comparison of the works. The court first analyzes the similarity of ideas extrinsically by focusing on the objective similarities in the details of the works. *Id.* If there is substantial similarity in ideas, "similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Id.* (citation omitted).

Everest argues that there is sufficient direct evidence of copying for the court to hold as a matter of law that plaintiffs infringed Everest's copyrighted plans. CSM referred to the Everest plans in its May 1992 submission to the Watershed District and the first set of CSM drawings incorporate a sheet of the Everest plans. Everest has also shown that the first site plan complied with the City's setback requirements and other design requirements although neither the draftsman or the architect hired by Cooperman had reviewed the requirements. The court agrees that this evidence indicates that plain-

tiffs used the copyrighted plans without Everest's consent.

Everest also contends that CSM created its section drawing dated April 29, 1992, by tracing the Everest section drawing dated May 10, 1991. The project designation, building, trees, cars, lettering and numbering in the two drawings are identical. Plaintiffs deny tracing or copying the Everest section drawing. Everest also relies on the quick two-day turn around for completion of a preliminary site plan by Cooperman. Although there is some direct evidence of copying in the record, the court concludes that it should assess the circumstantial evidence before deciding the issue of infringement.

A comparison of the objective details of the Everest plans and the two sets of CSM plans shows there is a similarity of ideas between them. Both Everest and CSM proposed and designed a rectangular office showroom for the Roseville site. Infringement of expression requires the court to evaluate the response of the ordinary, reasonable person to the two forms of expression. *Hartman*, 833 F.2d at 120. The essential inquiry is whether the total concept and feel of the works in question are substantially similar. *Hartman*, 833 F.2d at 120–21.

When viewing the Everest plans and the first set of CSM plans side by side, it is clear that the plans are substantially similar. The building design and the site plan are remarkably similar. Both buildings include unusual features such as sawtooth loading doors and a parapet wall. The ordinary observer would also conclude that the length of the buildings, the use of brick on frontage and back of the building and the floor elevations are very similar. The court notes that the placement of cars and trees as well as the lettering and numbering in some of the CSM drawings is identical to the Everest plans. The placement of the building on the site, the landscaping, the parking areas and vehicular circulation are also virtually identical.

---

5. The court also rejects plaintiffs' contention that copyright protection is not available because the Everest plans depict a utilitarian structure. As long as an object embodies originality, copyright protection is not precluded by the fact that the design is embodied in a "useful article." *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). *Accord Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876, 879–80 (9th Cir.1992).

CSM adopted methods identical to those devised by Everest for accommodating various constraints on the Roseville site.[6] The court agrees that the reaction of Everest and CSM to a powerline easement and city ordinances concerning parking were dictated by the nature of the constraints. The court notes that CSM has failed to explain how it complied with the City's setback and other parking requirements even though its architects had not reviewed the requirements and were not otherwise familiar with them before they drafted the initial plans. The court rejects the contention that there was only one plausible response to the other constraints imposed on the site. Rather, the accommodation of the City's preferences reflect Everest's creativity. While plaintiffs were free to create their own version of an office showroom that accommodated the constraints, they were not free simply to take the work of Everest even if they did so at the City's behest.

Plaintiffs stress several differences between the Everest plans and the CSM plans. There are some differences in the external appearance of CSM's building, including round building ends and the placement of doors and windows. The Everest site plan has a sidewalk wrapping around the entire building, CSM has shrubs around the perimeter with sidewalks at entry points only. Everest proposed a slightly deeper retaining pond and the construction of retaining walls.

It is the presence of substantial similarities, however, rather than differences which determines whether infringement exists. "The existence of differences will not negate infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential within the total context of [the copyrighted] work." *Chuck Blore & Don Richman, Inc. v. 20/20 Advertising, Inc.*, 674 F.Supp. 671, 680 (D.Minn.1987) (citations omitted). The similarities between the Everest and CSM plans are substantial and cannot be considered inconsequential. The court also concludes that the similarities between the plans involve protectable material insofar as the similarities reflect products of Everest's creativity.

A comparison of the Everest plans and the second set of CSM plans also reveals significant similarities. After Everest charged CSM with infringement, CSM modified the entrance configuration off Long Lake Road, curved the parking area, and made some changes to the utility layouts, and elevation and grading design. The court concludes that "[t]he ordinary reasonable person would simply fail to perceive these differences and would conclude the aesthetic appeal of the [projects] as the same." *20/20 Advertising*, 674 F.Supp. at 680. After careful consideration, the court concludes that the ordinary observer would find the Everest plans and the second set of CSM plans substantially similar. Having concluded that Everest has shown that the two sets of CSM plans are substantially similar to the Everest plans and building design, the court holds that plaintiffs infringed the copyrighted plans.

## C. Fair Use Defense

Plaintiffs contend that their use of Everest's plans and drawings constitutes a fair use within the meaning of the Copyright Act. *See* 17 U.S.C. § 107. The fair use doctrine allows use of copyrighted works "for purposes such as criticism, comment, news reporting, teaching ... scholarship, or research." *Id.* In making a finding on fair use, the court considers: (1) the purpose and character of the use, including whether the use is commercial in nature; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Id.*

Plaintiffs did not use the Everest plans for nonprofit or educational purposes. Rather, they exploited the plans to further their own commercial gain. The fact that plaintiffs used Everest's plans for profit weighs heavily against a finding of fair use. *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 449, 104 S.Ct. 774, 792, 78 L.Ed.2d 574 (1984)

---

6. The "constraints" identified by CSM consist of city ordinances, an NSP easement, a ponding requirement, certain preferences expressed by the City and what CSM refers to as "market" factors.

(use is presumptively unfair where infringer uses a copyrighted work for commercial gain); *Rogers v. Koons,* 960 F.2d 301, 309 (2d Cir.1992) (use of a copyrighted work for personal gain militates against a finding of fair use).

■ Whether or not a work is published is critical to its nature under factor two, because "the scope of fair use is narrower with respect to unpublished works." *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 564, 105 S.Ct. 2218, 2232, 85 L.Ed.2d 588 (1984). Plaintiffs contend that the submission of the Everest plans and drawings to the City and the Watershed District constitutes a limited publication under the Copyright Act. The court rejects that contention. The filing of the Everest plans with the City does not constitute a publication under 17 U.S.C. § 101. *East/West Venture v. Wurmfeld Associates, P.A.,* 722 F.Supp. 1064, 1066 (S.D.N.Y.1989). *See also WPOW, Inc. v. MRLJ Enterprises,* 584 F.Supp. 132 (D.D.C.1984) (filing of engineering report with FCC which subjected report to public inspection did not constitute publication under Copyright Act); 1 *Nimmer on Copyright* § 410 (filing of architectural plans with local authorities not an act of publication). The submission of the Everest plans was restricted to the entities without whose participation and approval the plans could not be given practical effect. Such a distribution did not entitle CSM to use or copy the drawings without Everest's permission. *Kunycia v. Melville Realty Co., Inc.,* 755 F.Supp. 566, 574 (S.D.N.Y.1990). The court holds that the second factor also weighs against a finding of fair use.

Plaintiffs contend that they did not copy any protectable element of the Everest plans. Rather, they claim to have only relied upon the portions of the Everest plans that were dictated by land use requirements imposed on the site by the City. Thus, plaintiffs argue that a fair use defense lies because the uniqueness of the site required the Everest and CSM plans to incorporate certain development schemes and design features. The court has already concluded that the similarities between the plans involve protectable material and that the unique site features did not mandate the degree of similarity between the plans. The evidence shows that plaintiffs infringed substantial portions of the copyrighted work. Accordingly, the court holds that the third factor weighs against a fair use defense.

The final factor concerns the effect of the use on the market for or value of the copyrighted work. Plaintiffs contend that Everest destroyed the only potential market for its plans when it abandoned development of the project. The court disagrees. By electing to cease development of the project, Everest did not surrender its rights in the architectural plans. The fact that CSM inquired about buying the Everest plans demonstrates that there was a market for the plans after Everest and the City terminated their agreement. That CSM won architectural awards for the project also indicates the value of the Everest plans. The court finds that plaintiffs usurped the value and utility of the Everest plans by fulfilling the demand for the copyrighted work. Thus, the court holds that the fourth factor also weighs against a fair use defense. The court concludes that plaintiffs' infringement of the copyrighted Everest plans was not a fair use within the meaning of the Copyright Act.

**2. Lanham Act**

■ Section 43(a) of the Lanham Act imposes liability where a person's acts place "into commerce" a good or service containing a false designation of origin. 15 U.S.C. § 1125. To state a claim for violation of the Lanham Act, Everest must demonstrate that the allegedly deceptive good entered or affected interstate commerce. This Everest cannot do. The counterclaim and third-party complaint contains no allegation of the requisite interstate commerce element. Even if the pleadings were sufficient, the facts in the record clearly show that the CSM plans were used only in Minnesota and did not enter or affect interstate commerce. Thus, the court concludes that the Lanham Act claim asserted by Everest is subject to summary dismissal.

**3. Minnesota Deceptive Trade Practices Act**

■ Under Minnesota law, a person engages in a deceptive trade practice when the person:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by another;

\* \* \* \* \* \*

(13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

Minn.Stat. 325D.44, subd. 1. The primary element of a claim under the Minnesota Deceptive Trade Practices Act requires a showing of likelihood of confusion. *Claybourne v. Imsland,* 414 N.W.2d 449, 451 (Minn.Ct.App. 1987). Plaintiffs argue that Everest has not demonstrated a likelihood of confusion. To withstand summary judgment, Everest need only establish the mere likelihood of confusion, not actual confusion. *Id.*

Everest contends that plaintiffs wrongfully and intentionally suggested a false affiliation or sponsorship with Everest. Everest claims that plaintiffs improperly suggested they owned the Everest plans or at the very least that Everest had approved their use of the plans. Everest contends that plaintiffs misled the Watershed District as to the source and sponsorship of the CSM plans in order to improve their ability to obtain official approval quickly and with reduced costs. While the evidence is not overwhelming, the court concludes that a material fact dispute exists concerning the likelihood of confusion in this case. At various times, plaintiffs seemed to suggest that they used the Everest plans with Everest's approval. Accordingly, the court holds that plaintiffs are not entitled to summary judgment on Everest's claim under Minn.Stat. 325D.44.

### 4. Unfair Competition and Unjust Enrichment

■■■■ Plaintiffs contend that Everest's claims for unfair competition and unjust enrichment are preempted by federal copyright law. A state common law or statutory claim is preempted by section 301 of the Copyright Act if (1) the work at issue is within the subject matter of copyright as defined in sections 102 and 103 of the Copyright Act, and (2) the state law created right is "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" of the Copyright Act. 17 U.S.C. § 301(a). *See also National Car Rental Sys. v. Computer Assocs. Int'l., Inc.,* 991 F.2d 426, 428 (8th Cir.1993). Section 106 grants to the copyright owner the exclusive right to reproduce the copyrighted work, prepare derivative works and to distribute copies of the work. 17 U.S.C. § 106.

■■■■ Preemption analysis involves determining whether the state law claim contains an element not shared by the federal law. Section 301 preempts only those state law rights that " 'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law." *National Car Rental,* 991 F.2d at 431 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992)). If a state cause of action requires an extra element, beyond mere copying, preparation of derivative works or distribution, then the state cause of action is qualitatively different from, and not subsumed within, a claim of copyright infringement. *Id.*

There is no dispute that the architectural plans at issue are within the subject matter of copyright. The key inquiry is whether unfair competition and unjust enrichment require elements different from a claim of copyright infringement. Unfair competition generally involves situations in which a party misrepresents the origin of goods, known as "palming off." Under Minnesota law, a party claiming unjust enrichment must demonstrate that the other party illegally or unlawfully benefitted from the effort of another. *First National Bank v. Ramier,* 311 N.W.2d 502, 504 (Minn.1981). Thus, under Minnesota law, unfair competition and unjust enrichment are not the equivalent of a claim for copyright infringement. The court concludes that Everest's unfair competition and unjust enrichment claims are not preempted.

## CONCLUSION

The court holds that copyright protection extends to Everest's architectural plans and building design. The court also concludes that by showing that the Everest and CSM plans are substantially similar, Everest has proven plaintiffs infringed the copyrighted work. The court holds that plaintiffs are entitled to summary judgment on the Lanham Act claim asserted by Everest. The court concludes that Everest's state law claims survive summary judgment.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion of plaintiffs for summary judgment on their declaratory judgment claim is denied and summary judgment is awarded in favor of Everest;

2. Everest's motion for summary judgment on its claim of copyright infringement is granted and the motion of plaintiffs for summary judgment on Everest's claim of copyright infringement is denied;

3. The motion of plaintiffs for summary judgment on the Lanham Act claim asserted by Everest is granted;

4. The motion of plaintiffs for summary judgment on Everest's state law claims is denied.